### UNITED STATES of America, Plaintiff–Appellee,

v.

**Curtis Lee BREWER, (86–6155), James Phillip Brewer, (86–6156), Giles Erwin Ferguson, (86–6157), Defendants–Appellants.**

**Nos. 86–6155 to 86–6157.**

United States Court of Appeals, Sixth Circuit.

Argued July 27, 1987.

Decided Aug. 1, 1988.

---

James W. Price, Jr. (argued), Nashville, Tenn. (Court-appointed), for Curtis Lee Brewer.

John T. Hennis (argued), Chattanooga, Tenn. (Court-appointed), for James Phillip Brewer.

Timothy A. Deere (argued), Chattanooga, Tenn. (Court-appointed), for Giles Erwin Ferguson.

John W. Gill, U.S. Atty., John C. Cook, John P. MacCoon (argued), Chattanooga, Tenn., for U.S. in No. 86-6155.

John W. Gill, U.S. Atty., John P. Mac-Coon (argued), Chattanooga, Tenn., for U.S. in Nos. 86-6156 and 86-6157.

Before ENGEL, Chief Judge *, and MERRITT and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

On rehearing. Defendants-appellants Curtis Lee Brewer (Curtis Brewer), James Phillip Brewer (James Brewer), and Giles Erwin Ferguson (Ferguson), appealed their respective jury convictions for unlawful possession of firearms by convicted felons. Defendants James Brewer and Ferguson also appealed their enhanced sentences imposed pursuant to the Armed Career Criminal Act of 1984 (the ACCA), 18 U.S.C.App. § 1202, 841 F.2d 667.

The defendants' convictions resulted from the discovery of a Ruger rifle and homemade silencer (along with numerous burglar tools) in the trunk of a rented automobile in which the defendants and one other passenger, Joe McQuiston (McQuiston), were traveling in and about the city of Chattanooga, Tennessee. An experienced police officer, Del Thomasson (Thomasson), stopped and detained the motor vehicle in question for a traffic violation. During his conversation with the driver, Thomasson observed a book of police radio frequencies, flashlights, gloves, and an object which appeared to be a police radio scanner inside the automobile. Officer Herbert Keedy detained the vehicle while Thomasson departed the scene to obtain a search warrant. Thereafter, Keedy radioed Thomasson that jumper wires (which may be used to bypass burglar alarms) were visible inside the vehicle. Upon the joint observations of the police officers, Thomasson received a warrant to search the vehicle. When he radioed Keedy that he had received the warrant, Keedy searched the trunk of the automobile and found burglar tools, a rifle, and a silencer. At trial, McQuiston, who had confessed and had pleaded guilty, testified

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

that the four men were planning to burglarize a department store in Fort Oglethorpe, Georgia and that all four collectively possessed the rifle and silencer as part of their burglar tools (to shoot out burglar alarms). James Brewer's wife identified the rifle and silencer as having been used previously by her husband in the commission of burglaries. McQuiston also noted that he had seen the rifle and silencer in the possession of the Brewers on a previous occasion. The evidence was uncontroverted that the rifle and silencer were functional, unregistered, and had traveled in interstate commerce, and that the defendants were convicted felons.

Defendant Curtis Brewer was sentenced to two and six years of imprisonment, to be served consecutively. Defendant Ferguson was sentenced to be incarcerated for 15 and 10 years to be served concurrently and James Brewer was sentenced to imprisonment for 20 and 10 years to be served concurrently, pursuant to the ACCA. All defendants appealed to this court and their appeals have been consolidated for disposition.

This appellate review of the ACCA presents an issue of first impression in this circuit, and challenges this court to determine if the government is specifically required to charge in the indictment and prove at trial a defendant's prior convictions pursuant to the mandate of the ACCA. Under that section, a felon who possesses firearms may be sentenced to a maximum of two years *unless* he has previously been convicted for committing three prior felonies. Three-time recidivists are subject to imprisonment for a period of not less than fifteen years without eligibility for parole.[1]

In the instant case, the prior convictions of the vulnerable defendants were not specifically charged or proved during trial. However, on July 4, 1986, prior to the commencement of their trial on the charges of the indictment, they were each formally noticed that the government would seek enhanced sentencing pursuant to 18 U.S.C. App. § 1202 (ACCA). The notice which preceded the September 9 trial by more than a month listed in detail the previous convictions upon which the ACCA charge was anchored.[2] Defendants were convicted subsequent to a jury trial. At their respective presentencing hearings neither the defendant Ferguson nor defendant Brewer challenged the government's proof and conceded their respective three prior felony convictions which mandated an enhanced sentence.[3]

■ Thus, any demurrer to the enhanced sentences in the instant case could not be predicated upon insufficient or vague notice-related due process concerns. Appellants had received proper notice and were not prejudiced by the government's use of the enhanced sentencing procedure.[4]

1. The pertinent section of the ACCA reads as follows:
   "a person who ... possesses ... in commerce ... any firearm and ... has three previous convictions ... for robbery or burglary ... shall be ... imprisoned not less than 15 years without eligibility for parole."
   Note that this section was repealed as of 180 days after May 19, 1986, but applies to the prosecution in question.

2. This court need not reach the issue of whether such procedures were constitutionally required.

3. In his supplemental brief and during the sentencing hearing, Brewer challenged three prior convictions that occurred when he was a juvenile and alleged that one was for attempted burglary, which was not a crime listed as one the ACCA would consider in sentence enhancement. Nonetheless, three of his six convictions remained unchallenged, which was sufficient to invoke the ACCA provisions. Additionally, Brewer attempted to argue that one of the crimes in the Notice was for "breach of trust" (which was not an ACCA offense) rather than for burglary. However, it was apparent from the evidence presented during the sentencing hearing that Brewer was convicted of *both* breach of trust and burglary, the breach of trust conviction having occurred in 1976 and the burglary conviction having occurred in 1972.

4. *See United States v. Hawkins,* 811 F.2d 210, 220 (3rd Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987):
   ...[t]here was adequate notice given by the government of its intention to seek enhanced penalties against Hawkins under the Armed Career Criminal provision. Such notice was filed two months before trial, stated the government's intention to request increased punishment under the provision and listed in detail the prior convictions relied therein.

■ Accordingly, because this court believes that Congress did not intend the ACCA to create a separate offense mandating the government to specifically plead in its indictment and prove at the trial in chief the recidivism that triggers the enhanced sentencing statute, and because this court believes that the Supreme Court decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is alien to the resolution of the issue joined in the instant case, the decision of the district court is AFFIRMED.

Initially, this court is prompted to arrive at this conclusion by a review of the congressional history which reflects upon the intent that embraced the promulgation of the ACCA.

To support its interpretation of the Congress' intent when it enacted the ACCA, the dissent has cited to S.Rep. No. 190, 98th Cong., 1st Sess. at 3 (1983) and has correctly quoted the statement attributed to "drafters" of the legislation during the 1983 Committee hearings announcing that "The bill creates a new Federal crime of carrying a firearm ... where a defendant has two prior felony convictions for robbery or burglary." Appellants' characterization of the motivation of Congress in 1983 when it considered the adoption of the ACCA is not entirely unwarranted. Indeed, the 1983 hearings accorded consideration to the feasibility of bifurcating the trial of an accused on charged substantive offenses from the trial of his recidivist career to avoid the acknowledged highly prejudicial effects inherent in proof of recidivism during the trial in chief. *Armed Career Criminal Act of 1983: Hearing on S. 52 Before the Committee on the Judiciary of the United States Senate,* 98th Cong., 1st Sess. at 20 (1983) (statements of Senator Specter and James Knapp, Deputy Assistant Attorney General); S.Rep. No. 190, 98th Cong., 1st Sess. at 4.

However, the legislation as originally introduced in both branches of the Congress in 1983 was abandoned and its demise also laid to rest the charges that the ACCA would create a separate crime, rather than an enhancement provision.

In describing its decision to abandon the 1983 version of the recidivist provisions of the ACCA, the House Report which accompanied substitute bill H.R. 6248, 98th Cong. 2d Sess. (1984) announced, in certain terms, its underlying motivation for the substitute legislation:

In *"enhancing"* this offense [§ 1202(a) ] with H.R. 1627–type sanctions, if the defendant has been convicted three times of robbery or burglary, we are *"enhancing"* an existing Federal crime, which would alleviate many of the problems associated with H.R. 1627 such as the issue of a local D.A. veto or the difficulties encountered by Federal courts in applying State robbery and burglary laws in Federal prosecutions.

H.R.Rep. No. 1073, 98th Cong. 2d Sess. 5, *reprinted* in 1984, U.S.CODE CONG. & ADMIN.NEWS at 3182, 3665 (emphasis added).

Any lingering doubts as to the congressional intention concerning the 1984 substitute legislation were dispelled by congressional expressions from the political leadership in both the House and Senate.

Substitute bill—H.R. 6248, 98th Cong., 2d Sess. 1984—was adopted by the House Judiciary Committee and it was this legislation that formed the basis for the ACCA as finally enacted into law. Here again, the approach taken by H.R. 6248 was clear from the record of proceedings which explained:

Under this approach, if the local authorities arrest a three-time loser in possession of a gun ... and can convince the U.S. Attorney that circumstances warrant prosecution *under the enhanced penalty provision of this bill,* the mandatory 15–year penalty is available.

H.R.Rep. No. 1073 at 5, U.S.Code Cong. & Admin.News, 1984, 3665 (emphasis added).

Similar sentiments were voiced during the floor debates by Representative Hughes, the principal sponsor of the substitute 1984 legislation who stated:

H.R. 6248 which we have before us is another, and, I believe, useful approach to this problem. This *bill would enhance the sanctions* of 18 U.S.C. Section

1202(a) with a 15–year minimum sentence if the defendant has been convicted three times of felonies for robbery or burglary.

130 Cong.Rec.H. 10550 (daily ed. Oct. 1, 1984) (statement of Rep. Hughes) (emphasis added).

and Representative Sawyer who stated:

The proposal before us today is crafted to avoid Federal prosecution of State burglary or robbery charges. *This proposal does not even expand Federal criminal law.* H.R. 6248 *takes an existing gun possession statute and enhances the penalty for* any violation by a person having been previously convicted three times for armed burglary and robbery.

H.R. 6248 would apply *the enhanced penalties* of a fine of not more than $25,000 or imprisonment of not less than 15 years, or both, in addition to the penalties for the underlying offense. These penalties would be applied to anyone possessing a firearm in violation of section 1202(a) to title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.App. 1202(a)). This person must have three previous convictions for burglary or robbery.

130 Cong.Rec.H. 10550–51 (daily ed. Oct. 1, 1984) (statement of Rep. Sawyer) (emphasis added).

The clear and concise expressions voiced in the House were echoed by the Senate leadership in debating the 1984 substitute legislation which was ultimately adopted. During the Senate debate, Senator Specter, the principal sponsor of substitute Senate Bill 52, stated in no uncertain language that:

This bill *would create no new Federal crime.* Under present section 1202(a), possession of a firearm by a convicted felon is already a Federal crime, with a maximum prison sentence of 2 years. This title would *simply provide for a stiffer sentence for career criminals.*

130 Cong.Rec.S. 13080 (daily ed., Oct. 4, 1984) (statement of Sen. Specter) (emphasis added).

This purpose was reaffirmed by Senator Thurmond, then Chairman of the Judiciary Committee, who was joined by Senators Biden and Kennedy in tendering an amendment to Senate Bill 52, who stated:

Special provisions applicable to this offense would permit danger to the community to be considered in making bail decision, *make the prior convictions a matter solely for the judge before the trial without requiring allegation in the indictment or proof at trial;* and require the sentence imposed to be served in full.

\*     \*     \*     \*     \*     \*

Thus, the *enhanced penalties* would be available if a person with two prior Federal or State robbery or burglary convictions were charged with a federal offense—for example, robbery of a federally insured bank or a post office.

130 Cong.Rec.S. 1563 (daily ed., Feb. 23, 1984) (statement of Sen. Thurmond) (emphasis added).

In light of the emphatic reflections of the entire Congress not to promulgate recidivist legislation that would create a new Federal crime to be separately charged and proved at trial, but rather to enact a statute that would delegate sentencing authority to a trial judge to enhance the sentence of a recidivist offender, this court is constrained to refrain from legislating by judicial decree and recasting the intended purpose of the ACCA and would join the well-reasoned dispositions of the Tenth Circuit in *United States v. Gregg*, 803 F.2d 568 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987); the Third Circuit, *United States v. Hawkins*, 811 F.2d 210 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); the Fourth Circuit, *United States v. Blannon*, 836 F.2d 843 (4th Cir.1988); the D.C.Circuit, *United States v. Jackson*, 824 F.2d 21 (D.C.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); the Eighth Circuit, *United States v. Rush*, 840 F.2d 574 (8th Cir.1988) (en banc); and the Ninth Circuit, *United States v. West*, 826 F.2d 909 (9th Cir.1987) in their

conclusion that the ACCA is merely a sentencing enhancement statute.[5]

Apart from the clarion declarations of congressional intent disclosed by the 1984 congressional debates preceding the enactment of the ACCA, accepted standards of statutory construction lend support to the conclusion that § 1202(a) does not create a separate indictable offense but constitutes a sentencing enhancement provision that need not be independently pleaded or proved at trial. As noted by the Third Circuit in *Hawkins:*

> [t]he second sentence of section 1201(a), which constitutes the whole of the Armed Career Criminal provision is evidently a continuation of the preceding sentence, and refers thereto.
>
> The first sentence of section 1202(a) ... lists the five classes of persons for whom it is a crime to receive, transport or possess firearms: (1) felons; (2) dishonorable dischargees; (3) mental incompetents; (4) renounced citizens; and (5) illegal aliens. The second sentence specifies one of the preceding classes of persons for different treatment. It does not stand on its own, but as an explanation of the preceding provision. Also, the inclusion of the Armed Career Criminal Act into the same paragraph as the pre-

viously enacted 1202(a)(1), with no division into separate numbers or letters suggests treatment of the contents as a single offense.

*Hawkins,* 811 F.2d at 218–19 (footnote omitted).

Moreover, on its face, § 1202(a) tracks the language of numerous other federal criminal statutes which have been regarded as enhancers rather than separate offenses. Indeed, one court has described the ACCA as containing "language that is typical of" a sentencing enhancement provision. *Jackson,* 824 F.2d at 24 (comparing the ACCA to 21 U.S.C. § 848(a)(1), a recidivist statute). Countless decisions have interpreted language virtually identical to that in the ACCA and have concluded that such language indicated a congressional intent to enhance sentencing.[6]

This court is also concerned that the interpretation of the ACCA urged by appellants and the dissent would "require the government to place evidence of a defendant's three prior felony convictions before the jury in any proceeding under the ACCA. The inherently prejudicial nature of this kind of evidence is well-known." *Jackson,* 824 F.2d at 25. "[A]bsent any convincing evidence, in either the text,

---

**5.** The Fifth Circuit decision in *United States v. Davis,* 801 F.2d 754 (5th Cir.1986) is the single decision that supports appellants' view expressed herein. However, the Fifth Circuit has subsequently implicitly rejected the dissent's application of the Supreme Court's decision in *McMillan* to recidivist statutes such as the ACCA. In *Buckley v. Butler,* 825 F.2d 895 (5th Cir.1987), that Circuit has specifically concluded that a Louisiana sentencing enhancement statute similar to the ACCA was constitutional and that the recidivism that triggered enhancement under the statute was not required to be pleaded or proved at trial.

**6.** *See United States v. Patterson,* 820 F.2d 1524, 1526 (9th Cir.1987) (18 U.S.C. § 3147—sentencing for those who commit offense while released on bail—sentence enhancement, not separate offense); *United States v. Soto,* 779 F.2d 558 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987) (dangerous special offender statute is merely enhancement); *United States v. Haley,* 758 F.2d 1294, 1298 (8th Cir.), *cert. denied,* 474 U.S. 854, 106 S.Ct. 158, 88 L.Ed.2d 131 (1985) (special dangerous offender statute). *See also, United States v. Scarborough,* 777 F.2d 175 (4th Cir.

1985) (same); *United States v. Towers,* 775 F.2d 184 (7th Cir.1985) (interpreting 21 U.S.C. § 849(b), special dangerous drug offender sentencing); *United States v. Adams,* 771 F.2d 783 (3rd Cir.) (18 U.S.C. § 3575) *cert. denied,* 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985); *United States v. White,* 748 F.2d 257 (5th Cir. 1984) (same); *Cf. Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3281–82 n. 7, 87 L.Ed.2d 346 (1985) (describing 18 U.S.C. § 357(e) as enhanced sentencing provision); *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764 (1985) (construing 21 U.S.C. § 848 continuing criminal enterprise's recidivist provision as not creating a separate offense since it only referenced prior convictions and did not refer to conduct proscribed by another statute); *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (describing provisions for using dangerous or deadly weapon under 18 U.S.C. § 111, relating to assaulting officer, and 18 U.S.C. § 942(c), relating to use of firearm in committing felony, as enhanced penalty provisions for double jeopardy purposes).

structure, or legislative history of the ACCA, that Congress intended to deviate from this general policy," this court should not require that highly prejudicial proof of prior convictions be required at trial. *Id.* It is true that a bifurcated trial would eliminate the prejudicial effect of introducing prior convictions before the jury. However, without exception, bifurcation is a result of specific legislative intent reflected by incorporation of appropriate provisions into the legislative enactment. It is apparent from the legislative history of the ACCA that Congress abandoned its initial intent to impose such a heavy burden upon prosecuting authorities and the courts.

As previously discussed herein, bifurcated trials were considered during the 1983 version of the ACCA but the concept of that earlier proposal was abandoned and replaced by the substituted version of the act which was ultimately adopted. S.Rep. No. 190, 98th Cong., 1st Sess. at 4 (1983); *Armed Career Criminal Act of 1983: Hearing on S. 52, supra,* at 20 (1983); H.R. 1627, 98th Cong., 1st Sess. § 2 (1983). Congressional action in refusing to provide for bifurcated trials in the enacted version of the ACCA again reflects upon Congress'

intention not to create a new offense but rather merely to provide for a sentence enhancing provision applicable to recidivist offenders.[7]

Lastly, the repeal and re-enactment of the ACCA's enhancement provision in the Firearm Owners' Protection Act of 1986 confirms that the statute was intended as an enhancing statute, not a separate substantive offense. The Firearms Owners' Protection Act of 1986 transferred the ACCA enhancement provision [previously found in 18 U.S.C. § 1202(a) ] to 18 U.S.C. § 924(e). H.R.Rep. No. 99–495, *reprinted in* 1986 U.S.CODE CONG. & ADMIN. NEWS 1327–1359, described the change as a *re-enactment of the ACCA. Id.* at 1349 and 1352. The Congress placed the new provision in the clearly denominated "Penalties" section of 18 U.S.C. § 924. As the *Jackson* court noted, "Thus Congress has now clearly, albeit prospectively, stated its intent to furnish a sentencing provision and not a provision defining a separate indictable offense." 824 F.2d at 23 n. 2.

Accordingly, this court is persuaded that the Congress intended the ACCA to be a sentencing enhancement provision,[8] which

7. The dissent's interpretation of § 1202 would place similar federal and state special dangerous offender statutes and recidivist enactments intended as sentence enhancers at risk. Among those federal statutes are the ones enumerated, *supra,* at footnote 6. The bulk of these statutes do not consider enhancement provisions as separate offenses which must be pleaded and proved at trial. *Cf. United States v. Stewart,* 531 F.2d 326, 332 (6th Cir.1976) (federal dangerous special offender statute provides far *more* due process protection for offenders than is required under analogous state recidivist statutes). *See also United States v. Ilacqua,* 562 F.2d 399, 404 (6th Cir.1977) (special dangerous offender statute is of the nature of a recidivist statute, and, as such, the feature of an enhanced sentence does not constitute a separate criminal charge requiring indictment by a grand jury). Indeed, a recent survey disclosed that only nine jurisdictions have adopted bifurcated two-state trials in which the jury considers both guilt *and* enhanced punishment. *See* Schor, *State v. Green—Recidivist Statutes: The Procedure for the Introduction of Prior Crime Evidence,* 61 Tul.L.Rev. 960, n. 32 (1987). Sentence enhancement statutes in as many as 41 states could be vulnerable if appellants' argument were accepted.

Such a wholesale invalidation of state and federal enhancement laws would place this circuit at odds with the cases cited in footnote 6, as well as with Fourth, Fifth and Eighth Circuit cases which have concluded that state sentence-enhancement provisions need not be proved at trial. *See Field v. Sheriff of Wake County, North Carolina,* 831 F.2d 530, 534–36 (4th Cir.1987) (upholding as constitutional a North Carolina procedure in which trial judge enhances defendant's punishment); *Butler,* 825 F.2d at 902–03 (upholding Louisiana multiple offender statute which does not require grand jury indictment on sentence enhancement facts and which does not require that facts be established beyond reasonable doubt); *Wessling v. Bennett,* 410 F.2d 205, 209 (8th Cir.1969) (defendant had no federal constitutional right to be informed prior to his conviction of the habitual criminal charges that are grounds for sentence enhancement under Iowa statute).

8. *See Field v. Sheriff of Wake County, North Carolina,* 831 F.2d 530 (4th Cir.1987) (sentencing factors need be considered by judge only); *Buckley v. Butler,* 825 F.2d at 902–03 (at sentencing the accused does not have the full panoply of due process protections which attend the determination of guilt or innocence; there is no Fifth Amendment right to grand jury indictment

conclusion would ordinarily dictate a decision in favor of the government. Rarely will the courts disturb the political branches' definition of the elements of a crime. "[I]n determining what facts must be proved beyond a reasonable doubt, the state legislature's definition of the elements of the offense is usually dispositive." *McMillan*, 106 S.Ct. at 2416. *See Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).[9] *See also United States v. Holland*, 810 F.2d 1215, 1221 (D.C.Cir.) *cert. denied*, — U.S. —, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987) ("Punishment established by a democratically elected legislature is presumed valid and a heavy burden rests on those who would attack the judgment of the representatives of the people."). Some courts have, in fact, declared that the rationale of this statutory analysis should *always* conclude the inquiry. "Once the Armed Career Criminal provision is considered to be a sentencing provision, no due process issue is presented." *Hawkins*, 811 F.2d at 220.

This court recognizes the existence of some limited precedent which has suggested that Congress does not have *absolute* license to define the elements of a crime. "There are of course, certain constitutional limits beyond which a legislature may not go in defining the elements of a crime." *Hoover v. Garfield Heights Mun. Court*, 802 F.2d 168, 173 n. 6 (6th Cir.1986), *cert. denied* — U.S. —, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987). "In certain *limited* circumstances, *Winship's* reasonable doubt requirement applies to facts not formally identified as elements of the offense charged." *McMillan*, 106 S.Ct. at 2417.

Those limited suggestions notwithstanding, the facts presented herein do not rise to the level of "limited circumstances" alluded to in the cited cases.[10]

It is important to note that the *McMillan* court specifically concluded that traditional sentencing factors need not be pleaded and proved at trial. *McMillan*, 106 S.Ct. at 2419. In the instant case, as in *McMillan*, the legislature "simply took one factor that has always been considered by sentencing courts to bear on punishment"—the number of prior offenses—"and dictated the precise weight to be given that factor." *Id.* at 2419. The congressional codification of traditional sentencing factors does not transform "a sentencing factor into an 'element' of some hypothetical 'offense.'" *Id.*

Moreover, the primary rationale for requiring sentencing factors to be submitted to a jury—the necessity for accurate factfinding—does not apply in the instant case. Prior convictions are highly verifiable matters of record which need not be subject to jury inquiry. Because defendants had received the totality of constitutional protections due in the prior proceedings, no additional factfinding is necessary. *See Buckley v. Butler*, 825 F.2d at 903:

> They [enhanced sentencing statutes applying to repeat offenders] have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done, but rather to what the state has *previously* determined that he has

on sentencing facts). *See also McMillan*, 106 S.Ct. at 2420 (there is no Sixth Amendment right to jury sentencing, even where the sentence turns on *specific* findings of fact).

**9.** The court said, 107 S.Ct. at 1099:
We there [in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)] emphasized the pre-eminent role of the states in preventing and dealing with crime and the reluctance of the Court to disturb a state's decision with respect to the definition of criminal conduct ...

**10.** The dissent relies in large part upon language in *McMillan* which the dissent interprets as re-

quiring "notice in the indictment and proof beyond a reasonable doubt of a fact that increases the maximum set by the legislature for the other elements of the offense." However, this assertion is founded upon misapprehension of a passage in *McMillan* which clearly states that the dissent's argument has only *"superficial"* appeal." 106 S.Ct. at 2418. The only other circuit which has considered the question has expressly rejected the dissent's position and has decided that maximum sentence-enhancers should be treated in the same manner as minimum sentence-enhancers. *See Field*, 831 F.2d at 536. Moreover, the six other circuits which have upheld the ACCA as constitutional have refused to interpret *McMillan* in the manner urged by the dissent.

done. And that previous determination must have been a formal, judicial determination of guilt; and hence one as to which the full measure of constitutional protections was available.

■ In short, the government's interpretation of the ACCA has neither run afoul of the statutory or constitutional safeguards. Indeed, the ACCA has expressed a clear congressional intent to enhance the sentences of repeat offenders. *McMillan* and its progeny suggest that sentencing enhancers such as the ACCA are constitutional. Accordingly, this court AFFIRMS the decision of the district court in its entirety.[11]

MERRITT, Circuit Judge, dissenting.

Although I agree with the majority's resolution of the search issue, I do not agree with its determination that the Armed Career Criminal Act is merely a "sentencing enhancement" provision. Therefore, I dissent.

The majority's selective reading of the legislative history of the statute before us leads it to the conclusion that it was the "emphatic reflections of the entire Congress not to promulgate recidivist legislation that would create a new Federal crime to be separately charged and proved at trial...." Although the majority correctly points out that several members of Congress referred to the bill as providing only for "enhanced" or "stiffer sentences for career criminals," the intent of Congress is not nearly so clear or "emphatic" as the majority portrays it to be. The portion of the House Report quoted by the majority refers to "enhancing" the *crime* rather than the *penalty;* the report does not define the meaning of "enhancing a crime." Although it is unclear from the passage quoted by the majority whether Congress intended to create a new substantive offense, the next page of the House Report (not quoted by the majority) sheds some

light on the issue. Under the heading "Sectional Analysis," the House Report states:

Section 2 amends 18 U.S.C. App. § 1202(a) by *adding a new offense* proscribing any felon who has been convicted previously of three felonies for robberies or burglaries (either Federal or State) from receiving, possessing, or transporting in commerce or affecting commerce any firearm. The sanctions are up to a $25,000 fine and a mandatory minimum 15–year sentence with no probation or parole.

H.R.Rep. No. 1073, 98th Cong., 2d Sess. 6, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3661, 3666 (emphasis added). This language, standing alone, leads to the opposite conclusion than that reached by the majority. Additionally, the drafters of the original bill introduced in 1983 declared that "[t]he bill creates a new Federal crime of carrying a firearm ... where a defendant has two prior felony convictions for robbery or burglary." S.Rep. No. 190, 98th Cong., 1st Sess. 3 (1983). Nothing in the legislative history indicates an intent to change the 1984 bill to a penalty-enhancer rather than a new offense. Instead, the 1983 bill was changed in 1984 to address the concern that the bill would make federal crimes of local robberies and burglaries. For a further discussion of the import of the legislative history, see Judge Gibson's well-reasoned dissent in *United States v. Rush,* 840 F.2d 574, 578–80 (8th Cir.1988) (en banc) (Gibson, J., dissenting). The end result of the ambiguous legislative history is that the intent of Congress is simply not clear.

I would hold that under *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and traditional principles concerning notice and proof of crimes, the second sentence of § 1202 creates an offense the elements of which must be

---

11. Defendants also challenged the legality of the search of the trunk of the car. After review of the district court opinion and the record, this court concludes that the gloves, the jumper wires, the police scanner, the book of police radio frequencies, and the suspicious activity and appearance of defendants were sufficient

for probable cause to support the issuance of a search warrant. At any rate, because of the officers' good faith reliance on the warrant, *see United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), this court declines to suppress the items of evidence offered at the trial as a result of the search.

charged in the indictment and proved in the liability portion of the criminal trial rather than simply established at the sentencing hearing.

In *McMillan*, Pennsylvania had adopted a new mandatory minimum sentencing statute requiring not less than five years imprisonment for a number of offenses if the defendant "visibly possessed a firearm during the commission of the offense." All of the offenses subject to the mandatory sentencing statute (e.g., murder, rape and robbery) were already serious crimes providing for maximum sentences substantially in excess of the five year mandatory minimum for use of a firearm. The Pennsylvania legislature expressly provided that the firearms factor which triggers the minimum firearm sentence is "not an element of the crime" to be charged and proved in order to establish criminal liability but is a sentencing enhancement fact to be shown at a sentencing hearing after conviction.

The Supreme Court, 5 to 4, upheld the Pennsylvania law because "it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." 106 S.Ct. at 2418. The majority suggested, without holding, that the result would be different if "a finding of visible possession exposed them [the defendants] to greater or additional punishment." *Id.* The four dissenters viewed the firearms factor as a necessary element of the offense to be charged and proved beyond a reasonable doubt under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), even though the minimum sentence remained within the maximum allowed for the crime. Therefore, it appears that all nine members of the Court would require notice in the indictment and proof beyond a reasonable doubt of a fact that increases the punishment beyond the maximum set by the legislature for the other elements of the offense. The majority and dissenting opinions in *McMillan* discuss at length the constitutional considerations and history concerning notice and proof of crimes that lead to this conclusion; I need not repeat that discussion here.

As the majority observes, six other circuits have concluded that the Armed Career Criminal Act does not create a new offense which requires notice in the indictment and proof of its elements beyond a reasonable doubt, while only the Fifth Circuit has held to the contrary, *see United States v. Davis*, 801 F.2d 754 (5th Cir. 1986).[1] However, except for a fleeting reference in *United States v. Hawkins*, 811 F.2d 210, 220 (3d Cir.1987), none of the decisions from other circuits mention *McMillan* or indicate an awareness of the principles set forth in that case. Judge Rosenn, in a cogent dissent in *Hawkins*, points out that the analysis in *McMillan* is controlling and requires notice by indictment and proof at trial because § 1202(a) "raises dramatically the minimum penalty and lacks any explicit language denominating it a sentencing factor rather than an element of the offense." 811 F.2d at 224. The views of six circuits that the second sentence of § 1202 provides merely for "sentencing enhancement" by the court after conviction are inconsistent with the Supreme Court's reasoning in *McMillan*. It seems clear under *McMillan* that an offense "which identifies conduct the legislature specifically intended to punish by a special sanction," 106 S.Ct. at 2426 (Stevens, J., dissenting), must also be charged

---

1. In a footnote, the majority implies that the vitality of *Davis* is called into question by the subsequent decision in *Buckley v. Butler*, 825 F.2d 895 (5th Cir.1987). The majority is in error. In *Davis*, a three-judge panel of the Fifth Circuit carefully examined the legislative history of the ACCA and concluded that Congress intended to establish a new offense. Judge Garwood, who was on the *Davis* panel, wrote the opinion for a three judge panel in *Buckley*.

*Buckley* involved a Louisiana statute; it was clear that the Louisiana legislature intended to create a sentencing enhancement procedure rather than a new offense. Because *Davis* construed the ACCA to be constitutional on its face, *Buckley's* holding that the Louisiana statute was constitutional does not conflict with *Davis*. Judge Garwood, apparently recognizing this clear distinction, did not cite *Davis* in his opinion for the panel in *Buckley*.

if it exposes defendants to "greater or additional punishment" than the conduct in fact charged in the indictment, 106 S.Ct. at 2418 (majority opinion). The Armed Career Criminal Act requires a sentence for recidivists of not less than seven and one-half times the maximum sentence for non-recidivists. Under the principles of *McMillan*, the offense charged by the second sentence of § 1202 should be charged separately.

The majority's statements concerning bifurcation do not advance its argument. The majority acknowledges that a bifurcated trial would eliminate the possible prejudice created by introducing prior convictions before the jury, but argues that Congress's choice not to provide for bifurcation indicates that it did not intend to create a new offense. However, in light of the already confused legislative history in this case and the majority's stated position that it is "constrained from legislating by judicial decree and recasting the intended purpose of the ACCA," I think it is inappropriate to attempt to discern the intent of Congress from what it did not say. In light of the availability of a bifurcated trial, *see Spencer v. Texas*, 385 U.S. 554, 566–68, 87 S.Ct. 648, 654–66, 77 L.Ed.2d 606 (1967), and in light of the fact that many criminal statutes now require notice and proof of prior crimes as elements of the offense, *see, e.g.*, 18 U.S.C. §§ 1961(5), 1962(c) (RICO), and 18 U.S.C. § 1737 (second offense of mailing pornography), the majority's argument concerning the prejudicial effect of the introduction of prior felonies is not persuasive.

I agree with Judge Rubin's opinion in *Davis* and the dissents of Judges Rosenn and Gibson in *Hawkins* and *Rush*. Accordingly, I would reverse the sentence imposed by the District Court and remand the case for resentencing within the maximum penalty for the crime charged in the indictment.