**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Walter M. WOLAK, Jr.,
Defendant–Appellant.**

**No. 89–2275.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 8, 1990.

Decided Jan. 18, 1991.

1194

Kathleen Moro Nesi (argued), Asst. U.S. Atty., Juanita Temple, Office of U.S. Atty., Detroit, Mich., for plaintiff-appellee.

James Sterling Lawrence (argued), Detroit, Mich., for defendant-appellant.

Before GUY and BOGGS, Circuit Judges, and GRAHAM, District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

Defendant, Walter Wolak, was convicted after a jury trial of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). His sentence was enhanced as a result of his being subject to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1),[1] and a

---

[*] The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation.

1. 18 U.S.C. § 924(e)(1) reads in relevant part:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on

sentence of 20 years was imposed. Wolak appeals both his conviction and his sentence, raising numerous claims of error. Upon a review of the record, we find no error or combination of errors requiring reversal of defendant's conviction but find it necessary to remand for resentencing.

### I.

The incident giving rise to this prosecution occurred on May 5, 1989, at 11:35 p.m. in a party store located in Hamtramck, Michigan. Wolak, who is white, had words with a black customer, John Pruitt, when Pruitt allegedly cut in line in front of Wolak. Pruitt allegedly threatened to knock down Wolak, and Wolak drew a pistol from under his shirt and pointed it at Pruitt's head. A struggle ensued involving Wolak, Pruitt, another customer named Steven La-Pyrne, and a store employee, Fouad Safi. The pistol ended up in the possession of Safi, who also called the local police. After the police arrived, they talked to Wolak, Pruitt, and the other witnesses. Wolak admitted to the police that he drew the pistol, and he was arrested for assault. After learning of Wolak's extensive criminal record, the case was ultimately turned over to federal authorities, and this prosecution ensued. At trial, Wolak based his defense on the claim that it was Pruitt who had the gun and that Wolak wrestled it away from him.

### II.

Although Wolak raises ten separate alleged trial errors, we will discuss together those that are related. We first address various alleged errors in evidentiary rulings.

### A. Exclusion of Pruitt's Criminal Record

■ Pruitt had a 12–year old conviction (1977) for third degree criminal sexual conduct, a felony. He received a sentence of two years probation. Pursuant to the provisions of Federal Rule of Evidence 609(b), the government moved in advance of trial that this conviction be excluded.[2] The district judge granted the motion. We review district court rulings on evidentiary matters under an abuse of discretion standard. *United States v. Mahar*, 801 F.2d 1477, 1495 (6th Cir.1986). Since Pruitt's conviction was over 10 years old, we are unable to find any abuse of discretion on the part of the trial judge. Although credibility was an issue in this case, the testimony of Pruitt was supported by other witnesses and buttressed by Wolak's admission that Wolak drew the gun.

### B. Exclusion of Evidence Allegedly Showing Bias on the Part of Pruitt

■ Wolak sought to introduce testimony through a long-time friend, Peter Hamlin, that Hamlin had seen Pruitt and another government witness, LaPyrne, talking together in the hall, and that LaPyrne allegedly said he "was going to hang the defendant." Upon investigation by the court, it turned out that LaPyrne was not involved, but perhaps a person who had been in court with LaPyrne was involved. Pruitt had already testified when this alleged conversation took place. The trial court found the whole episode to be fraught with speculation and conjecture and of no probative value. We agree. The defendant wholly failed to lay any foundation that would have compelled the admission of this type of testimony.

### C. Exclusion of Excited Utterance Testimony

■ Prior to the party store incident, Wolak had been across the street in a bar

---

occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years. . . .

**2.** Fed.R.Evid. 609(b) reads in relevant part:
 (b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the

witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

playing pool. Wolak wanted to offer the statement of one of the persons, Richard Carter, who had been in the bar with him. He did not call Carter to testify. Allegedly, Carter went across to the party store and came back into the bar and said, "They arrested Whitey (Wolak) and that he didn't have a gun, the other guy did." Wolak claims this statement qualified as an excited utterance.[3] We find no abuse of discretion in excluding this statement. There was no claim that Carter was not available to testify and no foundation was laid either to explain his absence or his source of knowledge. To begin with, as we see it, the statement was not an excited utterance. Although Carter may have been concerned about Wolak's arrest, his learning after-the-fact of the arrest of a long-time felon is hardly calculated to produce the spontaneous outburst that the rule envisions. Additionally, the key part of the "utterance" involves conclusions on Carter's part, since there was nothing to indicate that Carter was present when the incident took place or how Carter even became aware of the arrest. In short, the statement did not "contain sufficient indicia of reliability to ensure accuracy in the fact-finding process." *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984).

### D. The Admission of Defendant's Statement Made Prior to Miranda Warnings

■ When the two police officers responded to the "disturbance" call at the party store, they split up and one talked to Pruitt and the other, officer Schamanski, talked to Wolak. The officers had no details on what was going on, if anything, before they arrived, and they did not know what to expect. In trying to determine what happened, officer Schamanski asked Wolak what had happened and Wolak told the officer he was afraid Pruitt was going to assault him so he pulled a gun. Wolak argues that these statements were the product of a custodial interrogation and, since they were not preceded by *Miranda* [4] warnings, should have been suppressed. We disagree.

It is probably true, as Wolak suggests, that at the time he made the statement to Schamanski, he was not free to leave because the officers were not letting anyone leave until they found out what was going on. We do not see this as the type of "custody" envisioned by *Miranda.* Wolak's premise, carried to its logical conclusion, would require officers to announce *Miranda* warnings to everyone present immediately upon arriving at a possible crime scene before they knew what happened or before they could ask any questions. Wolak was not the specific focus of an investigation nor was there anything different from any other police-citizen investigative encounter.

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question....

*Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Here, Wolak was not even a suspect at the time he told the officer what occurred.

■ Defendant also argues that this statement should have been suppressed as a discovery sanction since it was not revealed to him until a few days prior to trial that the government intended to use this statement. We find no merit to this contention. The assistant United States attorney who tried this case became aware of

---

**3.** Fed.R.Evid. 803 reads in pertinent part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 ....
 (2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the statement on the Thursday before the Monday trial was due to start. She notified defense counsel immediately. The statement was not in the police report which had been prepared by Schamanski's partner. Schamanski was a relatively inexperienced police officer and did not appreciate the significance of this piece of evidence until discussing the case with a fellow officer, at which time he immediately contacted the prosecutor.

The district court held a hearing on this issue and concluded there was no intentional wrongdoing. The court also required the government to have the officer who prepared the report available for a defense interview. The trial judge also offered defense counsel an opportunity to further interview Schamanski and a choice as to when Schamanski would testify. Defendant was afforded an opportunity to extensively cross-examine Schamanski and thereby to inform the jury of the underlying circumstances relative to his testimony. Before the testimony of detective Budnik (the officer who prepared the police report), the court gave defendant as much time as he needed to prepare. The action taken by the district court was consistent with our holdings in *United States v. Glover*, 846 F.2d 339 (6th Cir.), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 565 (1988), and *United States v. Bartle*, 835 F.2d 646 (6th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988), two cases dealing with a similar issue. In both *Glover* and *Bartle*, we made it clear that we looked to whether there was intentional misconduct, and also looked to what opportunities were given to the defendant to deal adequately with evidence produced late in the game.

### III.

■ Defendant argues that several acts of prosecutorial misconduct occurred. We examine such a claim against the backdrop of the decisions which have held that, to warrant a new trial, the alleged misconduct must be significant enough to have denied defendant a fair trial. *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618

(1987). Further, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 728 F.2d 313, 320 (6th Cir.1984) (quoting *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.), *cert. denied sub nom. Bella v. United States*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).

All of the alleged acts of misconduct involved statements made or questions asked by the prosecutor. Where contemporaneous objections were made by defense counsel, some were sustained and some were overruled. We find that nothing would be served by reviewing the statements *seriatim* because, individually or collectively, they were not significant enough to have denied defendant a fair trial. Where defense objections were overruled, we agree with the trial judge that there was no impropriety on the part of the prosecutor. Where objections were sustained, we find that the remarks or questions, although better left unsaid or phrased in another manner, were not intentional acts of wrongdoing by the prosecutor.

### IV.

■ Defendant claims that the government failed to prove the interstate or foreign commerce nexus of the offense of which he was convicted. The firearm in question was a Colt, and a Colt employee testified that the pistol in question had been shipped from Connecticut to the United States Government Ordnance Depot in Manila in 1911. On cross-examination, the Colt employee was asked if it was possible that the pistol could have been brought back to Michigan by a serviceman. Since the employee had no knowledge of how the pistol got to Michigan, she obviously had to answer this question in the affirmative. From this, defendant constructs an argument based upon 18 U.S.C. §§ 925(a)(1) and (2). These sections provide certain exceptions relative to firearms shipped to the United States Government or transported by persons who received such firearms from the government for use in the military. Defendant misreads these sections.

They apply, for example, to a convicted felon in the military who, while in the military, possessed a weapon that had moved in interstate commerce. Obviously, the defendant here is not such a person. Even if we were to conjecture that the firearm possessed by Wolak had been brought back from Manila by a serviceman, that transportation would still satisfy the interstate commerce nexus of the offense as to anyone who later possessed the weapon in Michigan other than the military person who transported it. *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

## V.

■ Wolak alleges as error the failure of the trial judge to give an instruction on temporary innocent possession. This instruction was requested because it was defendant's position that the only possession he had of the firearm was when he wrestled it away from Pruitt. Our circuit has recently recognized that a justification defense exists in "rare situations." *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). The instruction requested by Wolak read in pertinent part:

> In this case, the defense is raised of temporary innocent possession. "Where a convicted felon, reacting out of reasonable fear for the life or safety of himself, in the actual physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose of defending himself, he is not guilty" of the offenses charged.

The trial judge declined to give this instruction and, instead, gave the standard boilerplate possession instruction, which is given in almost all criminal cases in which possession is an element of the crime.

In its brief on appeal, the government, applying a four-part test adopted in *Singleton*, argues that the defendant was not entitled to a justification defense because he was the one who initiated the confrontation. We think this argument misses the mark, but nonetheless we find no error

requiring reversal stemming from the court's refusal to give the requested instruction. It was clear right from the government's opening statement that the theory of prosecution was that Wolak came into the store with the firearm already in his possession. This made the trial a credibility battle. Both Wolak and Pruitt testified, as well as independent witnesses who corroborated Pruitt's version of the incident. It borders on the absurd to suggest that, if the jury believed that the only time Wolak had the pistol was when he forcibly took it away from Pruitt, they would have returned a guilty verdict. We think the trial judge would have been better advised to give an instruction on the innocent possession theory, although not the one suggested by the defendant as it was fatally flawed because it erroneously stated that "the Government must prove beyond a reasonable doubt that this defense [innocent possession] does not apply to this case." We find, however, under the facts of this case, that the failure to give the instruction was harmless error.

We do extend a caution relative to jury instructions, however. Using the standard boilerplate jury instruction in this case resulted in the jury being instructed on the concepts of joint and constructive possession. Neither joint nor constructive possession was an issue in this case, however, as the government's theory was that Wolak had actual possession of the firearm at all relevant times, and the defense theory was that the gun belonged to Pruitt. Although boilerplate instructions have their place, they should not be used without careful consideration being given to their applicability to the facts and theories of the specific case being tried.

## VI.

The defendant's final three claims of error all involve his sentencing. Defendant contends that (1) the court improperly sentenced him under 18 U.S.C. § 924(e) without a proper arraignment or jury trial; (2) the trial court improperly sentenced him to a term in excess of that authorized by Congress, and (3) the trial court improperly

sentenced him to a term in excess of that specified in the Sentencing Guidelines.

### A. The Application of 18 U.S.C. § 924(e)(1) to the Sentence

 At trial, the defendant argued that the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), was a separate offense that required a jury trial and findings by the jury. On appeal, defendant again raises this issue claiming he was denied his constitutional rights. Defendant concedes that in *United States v. Brewer*, 853 F.2d 1319 (6th Cir.) (on reh'g), *cert. denied*, 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988) and 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989), we rejected the same challenge that he now advances. Wolak argues, however, that this court should adopt the position of the dissent in *Brewer*. Even if we agreed with the defendant, we could not overrule the decision of an earlier panel. *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685, 689 (6th Cir.1985). Since *Brewer* is controlling, we reject defendant's argument on this issue.

### B. The Sentence Authorized by Congress

 Wolak was sentenced under the ACCA to a term of 20 years. Defendant contends that this sentence is in excess of the maximum allowed by law. The ACCA requires that a sentencing court impose upon a defendant a mandatory minimum sentence of imprisonment of at least 15 years without parole. It does not, however, set an upper limit on the sentence which a district court may impose. As the Fourth Circuit reasoned, "[b]y implication, the maximum penalty under the ACCA is life imprisonment." *United States v. Blannon*, 836 F.2d 843, 845 (4th Cir.), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988) (upholding 23-year sentence); *see also United States v. Lego*, 855 F.2d 542, 546 (8th Cir.1988) (upholding 18-year sentence); *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir.1987), *cert.*

*denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988) (upholding sentence of life imprisonment).

We join with those circuits that have rejected the argument that a 15-year sentence is the maximum that may be imposed under 18 U.S.C. § 924(e)(1).

### C. The Upward Departure From the Guidelines

 The Guidelines' range for the defendant's sentence was 151–188 months.[5] The trial judge departed upward and imposed a sentence of 240 months. As justification for the upward departure, the court stated on the record:

It is my intention to depart from the guidelines in this particular matter for the following reasons:

[First,] I think the Court has to consider the impact on society. I think this kind of crime happened in this particular matter, under the facts as I heard them here, has a major impact in society. Lots of people could have been hurt.

I think that Mr. Wolak showed a total disregard for any of the rules of society in relation to this particular crime. I think he has done so in relation to his whole total life, the way he has conducted his life. I feel sorry for him. I feel sorry for his family and friends. I know that they're here and know they've been here throughout the trial.

. . . .

The Court believes the prior convictions that weren't considered—and I understand your argument—and even if they were considered would have to be at certain level and have. I think the fact that—the nature of the kind of crimes that totally affect society—that he has been convicted of all of those things.

Taken into consideration, I think that 20 years is the appropriate amount of time that he should serve in relation to this particular matter. I think by that

---

5. The offense level was 29 and the criminal history category was VI. Thus, the maximum guideline sentence (188 months) was already in excess of 15 years, so that sentencing at the top of the range would have satisfied the 15-year minimum sentence mandated by 18 U.S.C. § 924(e)(1).

time, hopefully counsel's argument—and what I would like to think is my belief too—by that time he will be in a position to not commit anymore crimes. Hopefully, mentally, physically and everything else, society can be protected from him. (App. 292–93).

In *United States v. Joan*, 883 F.2d 491 (6th Cir.1989), we set forth the standards to be used in reviewing an upward departure.

First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary....

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error. *See* 18 U.S.C. § 3742(d).

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness....

*Id.* at 494 (quoting *United States v. Diaz–Villafane*, 874 F.2d 43 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

When we apply the *Joan* test here, we conclude upon *de novo* review that the circumstances relied on by the district judge do not make this case sufficiently unusual to warrant an upward departure. In reaching this conclusion, we are guided by our recent decision in *United States v. Kennedy*, 893 F.2d 825 (6th Cir.1990). In *Kennedy*, the trial judge attempted to justify an upward departure based upon "a long history of violation of the law" and the fact that in "the best interest of society ... you need an extended period of incapacitation." The judge observed that "parole, probation, rehabilitation just has [sic] not worked in your case[.]" *Id.* at 826–27.

The comments and the rationale of the trial judge in *Kennedy* are remarkably similar to that of the trial judge here.

We do not interpret our *de novo* review responsibility as a license to second-guess trial judges. Here, however, the very factors which the court found aggravating were the same factors that motivated Congress to pass the ACCA and which led to a criminal history category of VI (the highest) for the defendant. A person with a long criminal history has obviously not learned much from past incarcerations and is indeed a potential threat to society. However, that is why the defendant, who committed an offense with a basic maximum penalty of only five years, ended up with a 15–year minimum sentence being imposed.

In sum, we AFFIRM defendant's conviction. I would remand for the imposition of a sentence not less than 15 years, but not greater than 188 months. Judges Boggs and Graham believe an upward departure may be justified, however, and they would remand for reconsideration and resentencing.[6] Their view thus becomes the majority decision of this panel, and this case is REMANDED for resentencing in accordance with our decision in *Kennedy*.

6. *See, e.g., United States v. Gonzalez–Lopez,* 911 F.2d 542 (11th Cir.1990); *United States v. Belan-* ger, 892 F.2d 473 (6th Cir.1989); *United States v. Glas,* 1990 WL 179722 (N.D.Ill. Nov. 1, 1990).