**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0214n.06
Filed: March 22, 2007

**No. 06-5369**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES IVY, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Defendant-Appellant. | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| | ) | |

Before: DAUGHTREY and ROGERS, Circuit Judges, and OBERDORFER, District Judge[*]

James Ivy appeals his conviction for being a felon in possession of a firearm. Ivy was arrested after a police officer with the Memphis Police Department discovered that a pill bottle that Ivy had dropped contained crack cocaine. Upon discovery of the crack, Ivy was detained and a pat-down search revealed that Ivy was carrying a gun. Ivy argues on appeal that (1) the district court abused its discretion when it excluded the testimony of a defense witness regarding hearsay statements of a third party who claimed ownership of the gun, and (2) the district court erred when it refused to suppress the gun as the fruit of an illegal seizure. Because the hearsay statements do

_____

[*]The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

not fall within the exception for excited utterances and because the pat-down search was not in violation of the Fourth Amendment, we affirm Ivy's conviction.

## I. Facts

On February 10, 2005, James Ivy was in the parking lot of a BP gas station in Memphis, Tennessee. Located in the gas station parking lot was a detached building housing restrooms that were no longer in use; a utility trailer was parked in front of the detached building. According to Memphis police officer Christopher White, the manager of the gas station had previously asked the Memphis police to patrol the BP parking lot because of problems with loiterers, panhandlers, drug users, and prostitutes, especially around the detached building. After spotting Ivy standing in between the trailer and the detached building, White turned into an adjacent parking lot. White saw that Ivy was carrying a golf club and another object that turned out to be a pill bottle. When White approached Ivy and asked Ivy to "come here," Ivy walked away from White and around the trailer. According to White, he could see underneath the trailer to the other side and saw Ivy drop the pill bottle, pick it up, and drop it again. White testified that he retrieved the pill bottle the second time Ivy dropped it, told Ivy to stop, picked the pill bottle up, and physically detained Ivy after seeing that the bottle contained what appeared to be crack cocaine. After detaining Ivy, White conducted a pat-down search, during which White felt what he believed to be a gun in Ivy's pants pocket. White waited approximately two minutes until backup arrived and then retrieved the gun from Ivy's pocket.

Ivy was arrested and indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Ivy filed a motion to suppress the gun, arguing that it was the fruit of an illegal seizure. The district court held a hearing on the motion on August 18, 2005, during which White testified, recounting the facts described above. The district court denied the motion to suppress on October 28, 2005. Ivy's trial began on December 5, 2005. On December 6, 2005, Ivy attempted to introduce evidence that the gun discovered in the pat-down search belonged to an acquaintance of Ivy's named Earl Vane. Outside the presence of the jury, Roy Howard, a bystander near the BP station, testified that Vane called out to Ivy after Ivy exited the gas station and that Ivy and Vane walked together to the detached building. Howard testified that he saw Vane five to ten minutes after Officer White took Ivy into custody and that Vane seemed nervous, commenting that he would be glad when the police left so that he could retrieve his gun. The district court refused to allow Howard to testify regarding Vane's statements, rejecting Ivy's argument that the statements qualified as excited utterances. The jury returned a guilty verdict on December 6, 2005, and Ivy was subsequently sentenced to eighteen years and five months in prison. Ivy filed a timely appeal.

## II. Analysis

### A. Exclusion of Hearsay Testimony of Roy Howard

The district court did not abuse its discretion in refusing to allow Roy Howard to testify regarding statements that Earl Vane allegedly made, because the circumstances surrounding Ivy's detention and arrest were not sufficiently startling to cause nervous excitement on the part of Vane.

There are three elements of an excited utterance: "First, there must be an event startling enough to cause nervous excitement. . . . Second, the statement must be made before there is time to contrive or misrepresent. . . . Finally, the statement must be made while the person is under the stress of the excitement caused by the event." *United States v. Hadley*, 431 F.3d 484, 496 (6th Cir. 2005) (internal quotation marks and citations omitted). We review the district court's evidentiary ruling for abuse of discretion. *Id.*

The district court did not abuse its discretion in concluding that the arrest was not an event startling enough to cause nervous excitement. The exciting event consisted of White approaching Ivy in the parking lot of the gas station and telling Ivy to "come here." Although Ivy attempted to walk away, there was no chase or other dramatic occurrence. White's description of his initial approach and his arrest of Ivy does not reveal anything that would make the event one startling enough to cause nervous excitement. In fact, Ivy himself testified that Vane "took off" upon seeing White, so it is not clear that Vane witnessed anything other than White's approach, making the event even less likely to have resulted in nervous excitement. *See United States v. Wolak*, 923 F.2d 1193, 1196 (6th Cir. 1991) (concluding that the district court did not abuse its discretion in refusing to admit hearsay statements as excited utterances because, among other reasons, the declarant did not witness the arrest).

Ivy refers the panel to this court's decision in *United States v. McCullough*, 150 Fed. App'x 507 (6th Cir. 2005) (unpublished), to support his argument that an arrest qualifies as a startling event. However, in *McCullough*, a security guard approached the defendant, restrained him, and reached

inside the defendant's jacket to pull out the gun that the defendant was carrying. 150 Fed. App'x at 510. The arrest that the declarant witnessed in *McCullough* is a far cry from the events that Vane witnessed. White did not approach and immediately detain Ivy. There was no struggle. It is not even clear that he raised his voice to Ivy any more than was necessary to be heard. Thus, this case is unlike *McCullough*. Because White's approach and Ivy's arrest were not sufficiently startling to cause nervous excitement, the district court did not abuse its discretion when it refused to allow Howard to testify regarding Vane's statements.

### B. Motion to Suppress

Neither the police stop of Ivy nor the ensuing pat-down search was conducted in violation of the Fourth Amendment. The district court's factual findings in a suppression hearing are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

According to White's testimony at the suppression hearing, Ivy walked away when White told Ivy to "come here" and proceeded to walk around the trailer parked in the gas station's parking lot. White could see under the trailer that Ivy dropped the pill bottle, picked it up, and dropped it again. White testified that he retrieved the pill bottle "the second time [Ivy] dropped it[;] I told him to stop, that's when he actually stopped, I picked the pill bottle up, noticed what was in it and physically detained [Ivy]." Ivy did not testify at the suppression hearing.

White's initial command for Ivy to "come here" did not constitute a seizure because Ivy walked away from White rather than comply with White's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991) (holding that a defendant who ran away from police was not seized until he was tackled by a police officer). Because Ivy abandoned the pill bottle while walking away from White (prior to being seized), White was free to look inside the bottle and the discovery of the crack was not the result of an unconstitutional seizure. *Id.* at 629.

When Ivy did comply with White's command to stop, he was seized for Fourth Amendment purposes; however, this seizure did not violate the Fourth Amendment under *Terry v. Ohio*, 392 U.S. 1 (1968). An officer may briefly detain an individual without violating the Fourth Amendment if the officer possesses a "reasonable suspicion that [the defendant] was engaged in wrongdoing when [the officer] encountered him." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The totality of the circumstances supports White's investigative stop of Ivy: White was familiar with the area and the fact that the manager of the gas station had previously complained of criminal activity in the very location where Ivy was loitering; White had previously observed criminal activity near the detached building; Ivy was loitering near the detached building with a golf club and a pill bottle in his hands; Ivy attempted to walk away from White when White asked Ivy to "come here"; and Ivy dropped the pill bottle before complying with White's command to stop. Subsequently, the discovery of the crack provided White with probable cause to arrest Ivy, and the protective pat-down search leading to the discovery of the gun was not in violation of the Fourth Amendment. *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) ("Under the 'search-incident-to-a-lawful-arrest'

exception to the warrant requirement, a law enforcement officer may conduct a full search of an

arrestee's person incident to a lawful custodial arrest.").  Thus, the district court properly denied

Ivy's motion to suppress.

### III. Conclusion

For the foregoing reasons, we affirm Ivy's conviction.