**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**William Henry TAYLOR a/k/a Baldy
Briley a/k/a William Briley Taylor,
Defendant–Appellant.**

No. 88–6224.

United States Court of Appeals,
Sixth Circuit.

Argued May 15, 1989.

Decided Aug. 9, 1989.

As Modified on Denial of Rehearing
Sept. 11, 1989.

Rehearing and Rehearing En Banc Denied
Sept. 21, 1989.

Steve Parker, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

April R. Ferguson, Asst. Federal Public Defender (argued), Office of the Federal Public Defender, Memphis, Tenn., for defendant-appellant.

Before MERRITT and KRUPANSKY, Circuit Judges, and HILLMAN, Chief District Judge.*

MERRITT, Circuit Judge.

William Henry Taylor appeals both his conviction and sentence in this prosecution for possessing, as a felon, firearms which had been shipped and transported in interstate commerce, an act criminalized by the Armed Career Criminal Act. 18 U.S.C. § 922(g).[1] Most of the issues raised in this appeal involve the application of the Act's mandatory fifteen-year sentence for a defendant convicted under § 922(g) and having at least three prior convictions for violent felonies.[2] After careful consideration

---

* The Honorable Douglas W. Hillman, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1. The relevant provisions of § 922 are as follows:
(g) It shall be unlawful for any person—
(1) who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year; ...
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922 (West Supp.1988).

2. The relevant provision of § 924 is as follows:
(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.
18 U.S.C. § 924(e)(1) (West Supp.1988).
Section 924(e) goes on to provide this definition of "violent felony":
(2) As used in this subsection—

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ...
that—

of all Taylor's assignments of error, we have concluded that the judgment below should be affirmed.

Before the events from which this prosecution arises took place, Taylor had been convicted of six Tennessee felonies: one conviction for serving as accessory after the fact to armed robbery (on May 1, 1973); four burglary convictions (all on August 8, 1974); and one conviction for "felonious assault" (on June 14, 1985).

On February 27, 1988, Deputy Ricky Blair of the Haywood County Sheriff's Department arrived at 341 Margin Street, Brownsville, Tennessee, with a warrant to arrest Taylor. Taylor was there, and submitted to his arrest, but requested that he be permitted to change into clean clothes before departing. Blair acceded, and accompanied Taylor into the house to keep him under supervision. While inside, he noted on the wall of the bedroom in which Taylor was changing a gunrack holding a shotgun and several rifles. He reported this discovery to his supervisor, who in turn informed Special Agent Bart McEntire of the Federal Bureau of Alcohol, Tobacco and Firearms.

McEntire obtained a search warrant for 341 Margin Street. On March 4, 1988 McEntire, with another federal agent and several state agents including Blair, served the warrant. Taylor's "girlfriend," Julie Douglas, admitted them, and Taylor frankly pointed out the gunrack. Taylor refused, however, to state that the guns were his. The search of the house produced a number of firearms and a receipt signed by Joal Perry stating that he had sold a gun to Taylor. It also produced a good deal of circumstantial evidence that was introduced at trial to show that the 341 Margin Street house was Taylor's home and that the room with the gunrack was his bedroom.

The federal officers arrested Taylor. He was detained as a danger to the community. He was first indicted on one count only: possessing firearms as a convicted felon, in violation of § 922(g). This indictment, issued on March 8, 1988, listed a number of firearms and charged that Taylor owned them on March 4, 1988. R. 1.

On April 18, 1988 the Grand Jury issued the first of two superseding indictments. R. 13. This indictment repeated the count stated in the original indictment but added allegations that Taylor had been convicted of the six Tennessee felonies mentioned above. The new indictment additionally cited 18 U.S.C. § 924(e)(1), giving Taylor notice that the Government intended to seek the ACCA's mandatory fifteen-year sentence.

In May of 1988 the charge was tried to a jury. At that time the rule in the Sixth Circuit was that the predicate prior felonies on which § 924(e) sentencing depends must be proven to the jury. *United States v. Brewer*, 841 F.2d 667 (6th Cir.1988) (*Brewer I*), *rev'd*, 853 F.2d 1319 (6th Cir.) (*Brewer II*), *cert. denied*, —— U.S. ——, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988) and 109 S.Ct. 1142 (1989) (two petitions). The trial was conducted in accordance with *Brewer I*, with Taylor's prior criminal record being submitted to the jury. The jury was unable to reach a verdict, the District Judge declared a mistrial, and the case was set down for retrial. R. 32.

On June 30, 1988, the Grand Jury issued a second superseding indictment. R. 37a. This document charges Taylor with two discrete acts of criminal possession of a firearm: the originally charged act of March 4, 1988 and a second act of possession, this time of a single weapon not included in the original count, occurring on or about January 1, 1987. Under each count the new indictment reiterated Taylor's six Tennessee felony convictions.

Taylor pleaded not guilty to both counts in the second superseding indictment and stood trial in August of 1988. Just a few

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
18 U.S.C. § 924(e)(2) (West Supp.1988).

days before trial, the Sixth Circuit reversed its decision in *Brewer I*, 841 F.2d 667, deciding in the same case that the three prior felonies upon which the enhanced sentence were sought should be proven to the bench at the sentencing stage. *Brewer II*, 853 F.2d 1319. Over Taylor's objection, the District Judge removed from the jury consideration of the Government's claim that Taylor had been convicted of three violent felonies before his acts of firearms possession. The jury returned verdicts of guilty on both counts. Relying on the enhanced penalty provision of § 924(e)(1), and finding that all six of Taylor's prior felony convictions counted as predicate violent felonies under that section of the ACCA, the District Court sentenced Taylor to two fifteen-year sentences, to run concurrently. Taylor is currently serving these sentences.

Taylor appeals both his conviction and his sentence on a number of grounds which we believe are most intelligibly organized into five sets of issues. These are:

1. Attacks on counting the burglary convictions under § 924(e).

2. Attacks on counting the felonious assault conviction under § 924(e).

3. Attacks on counting the accessory after the fact to armed robbery conviction under § 924(e).

4. Attacks affecting all of the prior convictions under § 924(e).

5. Attacks on various rulings at trial.

We find below that the District Court improperly counted two of Taylor's burglary convictions in applying § 924(e), but that the remaining two burglary convictions were properly considered by the court for sentence-enhancement purposes (Part I). We also find that Taylor's felonious assault conviction was properly considered (Part II). We further find that the attacks affecting all the prior convictions are without merit (Part III). Thus, we hold that three of Taylor's convictions were properly counted as violent felonies to satisfy the requirements of § 924(e) and that no other defect in his sentencing appears.

Given these holdings, we conclude that we need not reach Taylor's challenge to the consideration of his conviction for serving as an accessory after the fact to armed robbery. Taylor does not argue that the ACCA prohibits consideration of the same three prior felony convictions at sentencing on two or more distinct § 922(g) offenses. We consider any such argument to have been waived, and, relying on that waiver, we hold that the assault conviction and the two burglary convictions are sufficient to support his sentence under both counts of his indictment. For this reason, we need not examine his conviction for serving as an accessory to armed robbery, and we decline to do so (Part II).

Finally, we hold that no reversible error occured at Taylor's trial (Part IV). As a result of all these rulings, we affirm both Taylor's conviction and his sentence.

## I. SENTENCING: CHALLENGES TO BURGLARY CONVICTIONS

Taylor made two efforts to remove his burglary convictions from the purview of the sentencing court. Both efforts failed, and he appeals. First, he claims that his second—and third-degree burglary convictions do not fall within the scope of the term "burglary" as it is used in § 924(e)(2)(B)(ii) and are therefore not "violent felonies" within the meaning of the Act. Second, he argues that only two of his four burglary convictions should have been counted towards the three previous convictions required by § 924(e). We reject the former challenge and sustain the latter.

### A. Definition of Burglary

■ Taylor argues that his convictions under Tennessee's second-degree burglary statute do not count as "violent felonies" within the scope of § 924(e)(1). This is the most difficult of the issues Taylor raises on this appeal.

For ease of reference we repeat the relevant portions of the ACCA's definition of a "violent felony":

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, ... that—

(i) has as an element use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Taylor argues that his burglary convictions do not meet the meaning of the term "burglary" in § 924(e)(2)(B)(ii) because, as he asserts, we must construe that term to encompass nothing more than common-law burglary. We reject his argument, and hold that his convictions fall within the meaning of the term "burglary" as it is used in the ACCA. We therefore do not need to decide whether they also "involve[ ] conduct that presents a serious potential risk of physical harm to another"—an alternate criterion of § 924(e)(2)(B)(ii)—or whether they have "as an element the use, attempted use, or threatened use of physical force against the person of another" and therefore satisfy § 924(e)(2)(B)(i) instead.

■ Before construing the statute to determine the meaning of "burglary," we pause for a moment to specify exactly which convictions Taylor's challenge involves and what crimes these convictions establish. In making this assessment we follow the rule, by now well established, that the determination whether a defendant's prior conviction involves a "violent felony" within the meaning of § 924(e) is to be decided not by reference to his actual conduct in the charged transactions but by reference to the statute under which it was obtained. *United States v. Leonard,* 868 F.2d 1393 (5th Cir.1989), *petition for cert. filed* May 18, 1989; *United States v. Sherbondy,* 865 F.2d 996 (9th Cir.1988); *United States v. Headspeth,* 852 F.2d 753, 758–59 (4th Cir.1988); *United States v. Johnson,* 704 F.Supp. 1403 (E.D.Mich.1989).

Taylor claims on appeal that his four burglary convictions are for the statutory crime of second—and third-degree burglary, announced at Tenn.Code Ann. §§ 39–3–403 and 39–3–404. These statutes expand upon the common-law definition of burglary in several respects.[3] This claim is incorrect as to one of the burglary convictions. The records disclose that one of Taylor's burglary convictions, Docket # 6756, is for first-degree burglary, a crime which, as Tennessee case law informs us, is codified at Tenn.Code Ann. § 39–3–401 (formerly Tenn.Code Ann. § 39–901 and prior to that Tenn.Code Ann. § 10910) (denominated "Burglary generally").[4] *Greer v. State,* 539 S.W.2d 855 (Tenn.Crim.App.1976). This section has been held to be coterminous with the common-law crime of burglary. *Ledger v. State,* 199 Tenn. 155, 285 S.W.2d 130 (1955).

■ Taylor argues that the ACCA uses the term "burglary" in its common-law sense, to encompass only the act of breaking and entering a dwelling during the nighttime with the intent to commit a crime therein. La Fave & Scott, *Criminal Law* 708 (1972). His appeal on this point therefore involves only three of his four burglary convictions, those obtained under Tenn. Code Ann. §§ 39–3–403 and 39–3–404.

---

**3.** Tennessee defines second-degree burglary as follows:

> Burglary in the second degree is breaking and entering into a dwelling house or any other house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging either permanently or temporarily and whether as owner, renter, tenant, lessee or paying guest, by day, with the intent to commit a felony.

Tenn.Code Ann. § 39–3–403(a).

Tennessee law provides this definition of third-degree burglary:

> Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony.

Tenn.Code Ann. § 39–3–404(a)(1).

**4.** The definition of burglary in this section is as follows:

> Burglary is the breaking and entering into a dwelling house, or any other house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging either permanently or temporarily and whether as owner, renter, tenant, lessee or paying guest, by night, with intent to commit a felony.

Tenn.Code Ann. § 39–3–401(a).

Turning to the problem of construing "burglary" as it is used in § 924, we observe with some chagrin that we must take our place somewhere in a deepening three-way split among the circuits. The Fourth and Ninth Circuits have held that burglary in the ACCA must be limited to common-law burglary. *United States v. Chatman,* 869 F.2d 525 (9th Cir.1989); *Headspeth,* 852 F.2d 753. These are the cases which Taylor urges us to follow. The Fifth and Eighth Circuits have explicitly rejected that reading, holding that a conviction under any state statute denominated "burglary" meets the meaning of the term "burglary" in the ACCA. *United States v. Portwood,* 857 F.2d 1221 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989); *United States v. Dickerson,* 857 F.2d 414 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1753, 104 L.Ed.2d 189 (1989); *see also United States v. Quintero,* 872 F.2d 107 (5th Cir.1989) (following *Leonard* ); *United States v. Taylor,* 864 F.2d 625 (8th Cir.1989) (following *Portwood* ). And finally, the Third, Seventh and Eleventh Circuits have read the legislative history to show that Congress never abandoned the meaning of the term "burglary" it had explicitly assigned to the term under the 1984 version of the Act, which had defined burglary as

> any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.

18 U.S.C. app. § 1202(c)(9) (1984), Pub.L. No. 98–473, Title II, § 1803, 98 Stat. 2185 (1984), *repealed by* Pub.L. No. 99–308, § 104(b), 100 Stat. 459 (1986). *United States v. Dombrowski,* 877 F.2d 520 (7th Cir.1989); *United States v. Palmer,* 871 F.2d 1202 (3d Cir.1989); *United States v. Hill,* 863 F.2d 1575 (11th Cir.1989). *See also United States v. Patterson,* 882 F.2d 595 (1st Cir.1989) ("We frankly cannot divine how Congress intended to define burglary.") Our review of the language of the statute and its legislative history compels us to agree with those circuits—the Third and the Eleventh—holding that the "generic" definition of burglary included in the

1984 version of the ACCA, though excised from the amended Act, was never dislodged from its original place as Congress' intent in using the term.

The present § 924(e) reflects two distinct 1986 amendments of the Armed Career Criminal Act of 1984, only a part of which is quoted just above. As originally enacted, this provision specified a mandatory fifteen-year sentence for any person who committed a specified federal firearms offense and who had three previous convictions "for robbery or burglary, or both." The statute proceeded to define burglary by the generic definition quoted just above. In 1986 Congress adopted two provisions that changed the terms of this statute. The Firearms Owners' Protection Act of 1986, in addition to recodifying the section at 18 U.S.C. § 924(e), changed the 1984 statute's definition of burglary in one respect: "any felony" became "any crime punishable by a term of imprisonment exceeding one year." Pub.L. No. 99–308, § 104, 100 Stat. 456 (1986). Later in 1986 Congress accomplished a much more fundamental overhaul of § 924(e). Career Criminal Amendments Act of 1986, Subtitle I of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, §§ 1401–02, 100 Stat. 3207, 3207–39 to 3207–40 (1986). Three changes made at this time are pertinent to our case. First, the predicate prior offenses were no longer limited to robbery and burglary, but were significantly expanded to include any conviction for "a violent felony or a serious drug offense, or both." § 924(e)(1). Second, the term "violent felony" received the definition it now has, at § 924(e)(2)(B). And third, the generic definitions of burglary and robbery that appeared in the earlier statute were deleted.

The bill finally adopted is thus an expansion of its predecessor, adding to the original predicate offenses of robbery and burglary not only "serious drug offense[s]" but also other "violent felon[ies]." The legislative history clearly reveals that the statute as amended reflects Congress' intention to *add* to the list of predicate offenses. Indeed, Congress rejected a bill

that would have given a definition of violent felonies that both expanded and narrowed the list of predicate offenses and, in particular, would have omitted most burglaries that had fallen within the 1984 Act's generic definition of burglary. Finally, at no time in the process of amending § 924(e) did Congress manifest any interest in reconsidering its earlier definition of burglary. We believe these facts unequivocally compel the conclusion that the ACCA as amended in 1986 did not alter the 1984 Act's determination that burglaries as defined in the 1984 Act should be predicate offenses for the enhanced sentence, but only added other offenses to the list. As the Supreme Court has said when faced with a similar legislative history, "There is nothing in the [amendment's] legislative history to indicate that, in changing the wording of this statute, Congress intended to abandon" its earlier intention. *New-man–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989).

The amended legislation was the product of protracted deliberation. One bill, as introduced in the Senate by Senator Arlen Specter and in the House by Representative Ron Wyden, proposed that predicate offenses be expanded to include both crimes of violence and serious drug offenses, and set forth this definition of a crime of violence:

(A) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) any other offense that is a felony and that [any felony that], by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Armed Career Criminal Act Amendments, Hearing on S. 2312 Before the Subcomm. on Criminal Law of the Senate Comm. on the Judiciary,* 99th Cong., 2d Sess. 3 (1986) (reporting text of S. 2312) (hereinafter Senate Hearing); *Armed Career Criminal Legislation, Hearing on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the House of Repre-*

*sentatives Comm. on the Judiciary,* 99th Cong., 2d Sess. 4 (1986) (reporting text of H.R. 4639) (hereinafter House Hearing) (brackets enclose language of H.R. 4639). The proponents of this bill clearly contemplated including robbery and burglary, while going beyond those two to reach other violent property offenses. As Representative Wyden stated in a written statement he submitted as part of his testimony before the House Subcommittee on Crime, "Federal and local law enforcement officials ... are now saying that the act would be much more effective if the predicate offenses were extended beyond robbery and burglary to include crimes of violence and serious drug offenses. I fully agree and that's precisely what the bill I recently introduced would do." House Hearing at 10 (statement of Congressman Wyden). Introducing this legislation in remarks to the entire Senate, Senator Specter stated that the 1984 Act should be amended "to broaden the so-called predicate crimes to include drug violations and certain other serious violent acts." 132 Cong.Rec. 7697 (daily ed. April 16, 1986) (statement of Sen. Specter). He made no mention of any concern that robbery and burglary should be excluded from the list of predicate offenses or that the scope of these crimes should be altered.

At the same time Senator Specter introduced a letter from John R. Bolton, Assistant Attorney General, evaluating S.2312. Bolton made these comments:

Your first suggestion would expand the Act's coverage by adding to the predicate crimes of robbery and burglary the predicate crime of "serious drug offense." ... Your second suggestion would expand the Act's coverage by adding to the predicate crimes of robbery and burglary the predicate crime of "crime of violence."

We think the most efficacious way to expand the Act's coverage is to remove from the Act the terms "robbery" and "burglary," and to replace them with the terms "crime of violence" and "serious drug offense." The term "crime of violence" would encompass robbery and

burglary since both are felonies that "by [their] nature, [involve] a substantial risk that physical force against the person or property of another may be used in the course of committing [them]."

*Id.* at 7698 (March 18 letter from John R. Bolton to Senator Arlen Specter) (bracketed insertions in original).

None of these statements of the intention of the bill, and none of the many similar comments we have not quoted here, indicate that this proposed amendment of the ACCA involved any reconsideration of the 1984 Act's "generic" definition of burglary. Another bill did aim to restrict, if not eliminate, the use of burglary as a predicate offense—but that bill was never adopted. H.R. 4768, proposed by Congressmen Hughes and McCollum, provided the following definition of a "violent felony":

"[V]iolent felony" means any State or Federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another.

H.R. 4768, House Hearing at 6. There seems to be some doubt as to whether this bill would exclude burglary. *See Hill,* 863 F.2d at 1580–81. Congressman Hughes, one sponsor of the bill, stated that the omission of burglary was not inadvertent, House Hearing at 26, and we take his remark to represent its true import despite a statement by the bill's other co-sponsor, Congressman McCollum, that suggests a contrary intent. House Hearing at 7 ("I support [the] ... decision to expand this measure, which now covers burglary and robbery, to include other serious violent crimes."). The bill was understood by many to exclude burglary, and several witnesses objected specifically to this problem. Here is a passage from the testimony of Deputy Assistant Attorney General James Knapp:

[H.R.4768] excludes as a chargeable prior conviction such serious felonies against property as most burglary offenses, and perhaps all, since a threatened or actual use of force against a person is not an element of the crime of burglary as defined under most State statutes. Thus the bill inadvertently narrows the scope of the present Armed Career Criminal Act....

Now the question has been raised, well, what crimes against property should be included? We think burglary, of course....

House Hearing at 15. The inclusion of burglary in particular was one of the main desiderata of those who criticised H.R. 4768. And indeed, Knapp's reasons for rejecting the proposed language of H.R. 4768 go to the heart of the Act's purpose, both in 1984 and in 1986, of helping the states fight the criminal activity of the relatively small number of felons who commit the vast majority of serious crimes:

First of all, having had experience with a career criminal program in a district attorney's office, one of the critical standard categories involve [*sic*] people with a long history of burglary convictions, because in fact your typical career criminal is most likely to be a burglar.... That is probably the No. 1 professional crime.

No. 2, even though injury is not an element of the offense, it is a potentially very dangerous offense, because when you take your very typical residential burglary or even your professional commercial burglary, there is a very serious danger to people who might be inadvertently found on the premises.

House Hearing at 26. Knapp clearly stated his belief that the 1984 Act's generic definition was adequate to bring within the Act those professional criminals whom he sought to include:

The one problem I see in using a specific generic term like burglary or arson —*that's fine for those statutes*—but a lot of these newer explosive offenses don't have a single generic term that covers them, and that is something that the committee may want to be very careful about in coming up with the final statutory language.

House Hearing at 15 (emphasis added). And later he made further remarks about the scope of burglary as a predicate of-

fense that are similarly consistent with the continued reliance on the definition given in the 1984 Act:

> Obviously, we would not consider, as prior convictions, what I would call misdemeanor burglaries, or your technical burglaries, or anything like that.

House Hearing at 26.

The failure of H.R. 4768 to gain the subcommittee's approval seems to be directly attributable to the omission of burglary. Bruce M. Lyons, then president-elect of the National Association of Criminal Defense Lawyers, made the following suggestion to remedy this deficiency:

> We note that the term "violent felony" would not appear to encompass the current law provision covering burglary, since "physical force against the person of another" is not an element of burglary. If the Subcommittee concludes that it can accept no retreat from current law, we would suggest that the preservation of burglary as a prior offense be accomplished simply by retaining "burglary" in section 1202(a), rather than by substituting for it the all-inclusive "crime of violence" definition proposed in H.R. 4639.

House Hearing at 34 (written statement of Bruce M. Lyons). Lyons clearly assumed, as did Knapp, that "burglary" should be understood to be coterminous with the crime as defined in the 1984 Act.

Lyons' suggestion that burglary be explicitly mentioned as a predicate crime was eventually accepted. First, however, the House Subcommittee on Crime reported a clean bill, H.R. 4885, which the full House Committee on the Judiciary favorably reported. H.R.Rep. No. 849, 99th Cong., 2d Sess. (1986). H.R. 4885 gave the following definition of "violent felony":

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) involves conduct that presents a serious potential risk of physical injury to another.

*Id.* at 1022. The committee report states that subsection (ii) "will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person." *Id.* at 1022. Perhaps because this language itself raises some questions about which burglaries would be included and which would not, the final legislation adopted into law adds an explicit reference to burglary to subsection (ii):

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

■ The full course of the legislative history as we have reviewed it here indicates that Congress hesitated over *whether* to include burglary in the new list of predicate crimes, and was unsure for a time *how* to include it, but that throughout these deliberations Congress never abandoned its consistent understanding that "burglary" was the crime defined by the generic definition of burglary in the 1984 ACCA. Because the statute itself, read in light of its legislative history, renders a clear and reliable interpretation, we need not resort to the canons of interpretation—the rule of lenity and the rule that, where Congress uses a common-law term and does not otherwise define it, Congress' intent should be assumed to be that the term be given its common-law meaning—which Taylor urges are necessary to decide this question. *See United States v. Bass,* 404 U.S. 336, 339–47, 92 S.Ct. 515, 518–22, 30 L.Ed.2d 488 (1971); *United States v. Turley,* 352 U.S. 407, 413, 77 S.Ct. 397, 400, 1 L.Ed.2d 430 (1957); *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952); *United States v. McDonald,* 692 F.2d 376, 379 (5th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).

Finally, we note that the generic definition of burglary actually adopted by Congress in the 1984 Act and assumed by

Congress in its adoption of the 1986 amendments of the Act provides a very sensible limit to the inclusion of this crime for sentence-enhancement purposes. As Judge O'Scannlain of the Ninth Circuit has argued, the common-law definition of burglary is retained by very few states, and involves a battery of arcane distinctions that have no place in modern federal criminal jurisprudence. *Chatman,* 869 F.2d at 530–31 (O'Scannlain, J., dissenting). On the other hand, the reliance of several circuits on the mere label of a statute may lead to the frustration of Congress' intent that only a history of serious, dangerous criminal behavior subject one to the ACCA's mandatory fifteen-year sentence: see, for instance, the *reductio* proposed by Judge Bright of the Eighth Circuit in his dissent in *Taylor,* 864 F.2d at 628 (a parking violation, if denominated "burglary," would satisfy the ACCA on this point). The 1984 Act's generic definition, in addition to being faithful to congressional intent, provides a judicially manageable mean between the extremes cobbled together by some other circuits.

Returning from this excursis into statutory interpretation to the case at hand, we find that Taylor's second- and third-degree burglary convictions all fall within the scope of the ACCA's definition of burglary. All are crimes punishable by imprisonment exceeding one year that consist of entering or remaining surreptitiously within a building that is the property of another with intent to engage in conduct constituting a federal or state offense.

### B. Counting the Burglary Convictions

■ Taylor also challenges the use of records of his four burglary convictions. All of these convictions were obtained on guilty pleas on August 8, 1974. He argues that, since the records submitted to the District Court indicate that no more than two actual burglaries were committed, at least two of his convictions must be considered multiple convictions that cannot be counted towards the three violent felonies required by § 924(e).

The parties disagree as to the exact scope of this challenge. We reject the Government's contention that Taylor is attempting to reduce the four burglary convictions to one. Taylor's brief and motions below aim only to reduce the four burglary convictions to two. This effort jibes with the records, which indicate that Taylor was indicted for the burglary of a service station committed in April 1974 and for the burglary of a dwelling committed in May 1974. No other acts of burglary appear in this record. Nor do the records indicate how many or which of the four burglary convictions relate to each act of burglary. We will go no further, then, than Taylor's brief and motions to the trial court seeking to reduce the four burglary counts to two for § 924(e) purposes. The question before us is whether the District Court, in its § 924(e) inquiry, should have considered only two burglaries as predicate violent felonies.[5]

We note that the question of how to count multiple convictions arising from the same or closely related actual conduct can be a difficult one, particularly where a defendant has been convicted in a single judicial proceeding of several felonies arising from conduct committed on the same night, in a prolonged attack on the same victim, or as a single "crime spree." *United States v. Towne,* 870 F.2d 880 (2d Cir.1989), *cert. denied,* — U.S. —, 109 S.Ct. 2456, 104 L.Ed.2d 1010; *United States v. Herbert,* 860 F.2d 620 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Gillies,* 851 F.2d 492 (1st Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Rush,* 840 F.2d 580 (8th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 87, 102 L.Ed.2d 63 *reh'g denied,* — U.S. —, 109 S.Ct. 381, 102 L.Ed.2d 370 (1988); *United States v.*

---

**5.** Taylor's brief explains this challenge by referring to Tennessee's persistent offender statute, Tenn.Code Ann. § 40–35–106, but of course this issue arises under the sentence-enhancement provision of the federal statute applied in Taylor's case.

*Greene,* 810 F.2d 999 (11th Cir.1986); *United States v. Petty,* 798 F.2d 1157 (8th Cir. 1986), *vacated and remanded,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), *rev'd and remanded,* 828 F.2d 2 (1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988). These cases are addressed to the problem of determining when convictions for discrete acts of criminal conduct undertaken within a single course of criminal conduct should be counted as separate predicate convictions under § 924(e). Our case presents no challenge to our skills at drawing fine lines, however, as the two burglaries revealed by Taylor's records were committed in separate months and involved different structures. Furthermore, we note that the Third Circuit has recently ruled that, "at an absolute minimum, convictions for the first two crimes must have been rendered before commission of the third crime." *United States v. Balascsak,* 873 F.2d 673, 681 (3d Cir.1989) (en banc). Taylor has not raised this issue, however, and, even if he had, it appears that his convictions for burglary were obtained well before he was convicted of felonious assault.

■ We are confronted with the relatively simple question whether a court applying § 924(e) can count as two predicate felony convictions two convictions which, as the record discloses, relate only to a single criminal act. The plain language of the statute we are applying bars such double-counting. In 1988 Congress amended § 924(e), specifying that the defendant must have three previous felony convictions for offenses "committed on occasions different from one another." Congress further stated that this amendment was merely a "clarification" of existing law. Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7056, 102 Stat. 4181, 4402 (1988). Thus, under the statute today (and at the time Taylor was sentenced), he has (and had) a right to be free from double-counting of multiple convictions arising from a single episode of criminal conduct.

We have no difficulty in determining that Taylor's two burglaries, committed in different months and involving different structures, were "committed on occasions different from one another." *Id.* We therefore hold that his four burglary convictions should have been counted under § 924 as two predicate convictions for sentence-enhancement purposes.

## II. SENTENCING: CHALLENGE TO CONVICTION FOR "FELONIOUS ASSAULT"

■ Taylor raises as an assignment of error the District Court's refusal to strike his conviction for "felonious assault" because of a claimed defect in the records of that conviction. Taylor claims that no crime denominated "felonious assault" appears in the Tennessee Criminal Code, so that his conviction for that crime was improperly obtained.

Before addressing the merits of this claim, we pause for a moment to ascertain its exact posture. Some language in Taylor's brief reflects his original effort, at his first trial, to establish that he was not a felon in possession of a firearm by attacking these conviction records. At Taylor's retrial, however, *Brewer II,* 853 F.2d 1319, was applied and these issues came up only at the sentencing stage. This assignment of error pertains not to Taylor's guilt under § 922(g) (that is, to the question whether he was a felon at the time he possessed firearms) but to his eligibility for the enhanced sentence of § 924(e). The question we must decide is whether § 924(e) permits this prior conviction to be considered a "conviction" at all because of defects in the records submitted to the District Court.

The District Court analyzed this issue under the rule of *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), in which the Supreme Court held that, in a prosecution under 18 U.S.C. app. § 1202(a) (prohibiting anyone under a state or federal felony conviction from receiving, possessing, or transporting a firearm), the defendant could not collaterally attack the prior felony conviction, even on the ground that his conviction was obtained in violation of his right to counsel under the constitution and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Tr.

V–614. It is doubtful that *Lewis* applies in the quite different context of a sentencing procedure: we note that at least two courts have held that it does not. *United States v. Clawson,* 831 F.2d 909, 914 (9th Cir. 1987), *cert. denied,* ── U.S. ──, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *United States v. Gantt,* 659 F.Supp. 73, 76–79 (W.D.Pa. 1987); *see also* 18 U.S.C. § 921(a)(20) (requiring that what constitutes a "conviction" under the ACCA be "determined in accordance with the law of the jurisdiction in which the proceedings were held").

Any error on this point would not require us to disturb the District Court's ruling, however, as the District Judge did consider the validity of the challenged records, evaluating the documentary and testimonial evidence before him in light of Tennessee law, and correctly concluded that they are not so flawed as to be insufficient to prove a conviction for § 924(e) sentence-enhancement purposes. As the District Court observed, Taylor's conviction for "felonious assault" is supported in the record by the indictment in the same case. In that document, Taylor was explicitly charged with "unlawfully, feloniously, willfully, knowingly, and recklessly caus[ing] serious bodily injury to Eugene Harding, by shooting him with a pistol, under circumstances manifesting extreme indifference to the value of human life." The relevant state statute is clearly Tenn.Code Ann. § 39–2–101 (Aggravated Assault), a recognized felony under Tennessee law. We agree with the District Court that the use of the term "felonious assault" on the record of conviction does not so undermine the documentary record as to exclude this conviction from the scope of ACCA sentencing.

Reviewing our holdings to this point, we conclude that the District Court properly counted two of Taylor's burglary convictions and his conviction for felonious as-

sault in imposing on him, on each count, the mandatory minimum sentence declared in § 924(e). These three convictions are a sufficient predicate for applying the § 924(e) sentence to one of the two counts of firearms possession. Furthermore, as we noted above, Taylor has waived any argument that these three convictions cannot be "re-used" as predicate violent felonies justifying imposition of the enhanced sentence on his second count of firearms possession. Not only does Taylor make no such argument in his brief; he specifically waived it in oral argument of his appeal. Assuming felonies can be "re-used" under different counts, as Taylor does and as we do for the purpose of this case, Taylor cannot invalidate his sentence by challenging a fourth conviction.

For that reason, we now decline to rule on three challenges Taylor has brought to the consideration of his conviction for serving as accessory after the fact to armed robbery. Two of these challenges involve the admission of records to prove this conviction. First, Taylor claims that he was arrested on charges that led to his conviction for serving as accessory after the fact to armed robbery when he was a minor, and yet the Government in this case adduced no proof that he was properly charged as an adult under Tennessee law, Tenn.Code Ann. § 37–1–134. Second, Taylor argues that his accessory-to-armed-robbery conviction was fifteen years old at the time of the conduct charged in this case, and that a provision of the *Sentencing Guidelines* bars consideration of convictions of that vintage.[6] *United States Sentencing Commission Guidelines Manual,* § 4A1.2(e)(1) at 4.5 (October 1987). Taylor's third challenge addresses the classification of this conviction as being for a "violent felony" under § 924(e). He argues that any assistance he might have

---

6. We note in passing that the *Sentencing Guidelines* provision which Taylor invokes here appears to be inapplicable to the facts of his case. The *Guidelines* provide that "[a]ny prior sentence of imprisonment exceeding one year and one month that was *imposed* within fifteen years of the defendant's *commencement of the instant offense* is counted." *United States Sen-*

*tencing Commission Guidelines Manual,* § 4A1.2(e)(1) at 4.5 (October 1987) (emphasis added). Taylor's sentence for serving as accessory to an armed robbery was imposed on May 1, 1973. Both of the charged offenses in this prosecution occurred less than fifteen years after that date—on or about January 1, 1987 and March 8, 1988.

given to others *after* they had committed an armed robbery cannot be construed to be "violent" within the meaning of § 924(e). Even if we were to hold that one of these arguments required the exclusion of this conviction from consideration under § 924(e), Taylor would still be legitimately subject to the sentences imposed by the District Court. We therefore decline to rule on any of these issues.

### III.  SENTENCING: ATTACKS AFFECTING ALL PRIOR CONVICTIONS

Taylor has presented us with three challenges that, if upheld, would affect all of Taylor's prior convictions or otherwise assign error to the sentencing procedures as a whole. First, he argues that, at the sentencing phase, the Government failed to adduce sufficient proof to show that Taylor's prior convictions were obtained with the full protection of the safe-guards required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Second, Taylor asserts that his challenge to the validity of all of his prior convictions for § 924(e) purposes presented a question for the jury, not the judge, to decide. Finally, Taylor argues that he should have been given the sentence due him under the *Sentencing Guidelines,* and not the statutory sentence imposed under § 924(e).

### A.  *Boykin.*

■ Taylor's *Boykin* challenge fails because the Government introduced sufficient evidence of his having made knowing and voluntary waivers of his constitutional rights when he entered the guilty pleas that led to his Tennessee convictions. The Government submitted records of Taylor's prior convictions, each of which specifies that he made a knowing and voluntary waiver of his constitutional rights before entering the plea. Taylor took the stand to testify that in fact he had not understood his waivers. Tr. V–561–88. The Government then brought Albert Schoonover, Assistant District Attorney for the State of Tennessee, to the stand to testify that he had heard Taylor's pleas in several cases

and that they were entered only after the judge advised him of the rights he was foregoing, and that the regular practice of Tennessee courts is to conduct orderly hearings in compliance with Tenn.R. Crim.P. 11, which sets forth the required advice to a defendant. Tr. V–588–605.

■ Taylor's argument here is basically that the Government bears the burden of proving, and failed to prove, that Taylor's *Boykin* rights were satisfied by introducing a transcript of the plea proceedings. This argument ignores the fact that the Government introduced into evidence records of each conviction certifying that Taylor had made a voluntary and knowing waiver. We are therefore not being asked to "presume a waiver of ... important federal rights from a silent record." *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712. The documentary proof adduced by the Government was strong enough to shift to Taylor the burden of proving that his convictions were in fact not constitutionally sound. Taylor failed to meet that burden, introducing only his own testimony—explicitly found by the District Court to be incredible. Tr. V–612. In light of the documentary proof and the prosecutor's testimony, we conclude that Taylor's rights under *Boykin* were not violated when the District Court considered his prior convictions for sentence-enhancement purposes.

### B.  *Brewer.*

■ Taylor argues that the validity of his prior convictions should have been considered an element of the crime for which he was indicted because the indictment on which he was tried issued while this Circuit's case law required such treatment. *Brewer I,* 841 F.2d 667. Just a few days before his second trial, the Sixth Circuit reversed *Brewer I,* ruling in *Brewer II,* 853 F.2d 1319, that the ACCA announced not a new federal crime but a sentence enhancement, so that prior convictions were to be proven not to the jury at trial but to the bench at the sentencing phase. In applying the rule of *Brewer II,* Taylor argues, the trial court accomplished an impermissible amendment of his indictment by remov-

ing consideration of his prior convictions from the province of the jury.

We are not at all sure what Taylor argues here. His entire argument on appeal is the citation of our decision in *United States v. Zelinka*, 862 F.2d 92 (6th Cir. 1988)—a case that delineates the difference between an amendment of an indictment and a mere variance in proof and that nowhere alludes to the problems raised by an indictment issued under the rule of a case that is reversed before trial. Taylor, through his attorney, adduced no argument at pre-trial argument before the trial judge beyond an assertion that he wished to proceed under *Brewer I.* Tr. II–40–41. The record discloses nothing more than Taylor's proposed jury verdict form, filed in open court without any supporting documents that would indicate why Taylor would have us hold that *Brewer II* should not be applied in this case. R. 47. In the charging conference Taylor's attorney argued only that, because the indictment charged Taylor with a number of violent felonies, they must be proven to and found by the jury. Tr. IV–480–82. The District Court ruled that whether Taylor's prior convictions were for violent felonies within the meaning of the ACCA was a question of law for it to decide. Tr. IV–482.

We decline the invitation Taylor has given us by this inadequate briefing to wrack our imaginations for every argument that he could have raised to support the assertion that the trial court improperly amended his indictment. The *Zelinka* case—his only authority—is not controlling, and he points to nothing to convince us that an injustice was done here. On the facts of this case only, therefore, we reject the argument that the District Court erred by failing to commit to a jury decision the question whether Taylor's prior convictions were valid for purposes of applying § 924(e).

### C. *Sentencing Guidelines.*

■ Taylor withdrew at oral argument his claim that the *Sentencing Guidelines* are unconstitutional. Taylor does argue, however, that he should have been sentenced according to the *Sentencing Guidelines* and should not have been subjected to the mandatory fifteen-year sentence announced by § 924(e) of the ACCA. His argument is directly addressed by the following provision of the *Sentencing Guidelines:*

If application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the guideline sentence.

*United States Sentencing Commission Guidelines Manual,* § 5G1.1(b) at 5.27 (October 1987). We do not believe that the failure of the *Guidelines* to explain their relationship specifically to § 924(e)(1) does anything to undermine the clear meaning of this section. Where a statutory minimum sentence applies, the *Sentencing Guidelines* adopt rather than displace it.

### IV. CHALLENGES TO TRIAL PROCEEDINGS

Taylor claims that three errors were made during his trial that warrant reversal of his conviction. We disagree.

### A. Evidence.

Taylor challenges admission of two types of documentary evidence: a piece of paper which appears to be a receipt for a gun signed by Joal Perry, and records of pawn transactions involving one of the weapons specified on the indictment.

Taylor appeals from the denial of his motion to suppress the receipt signed by Joal Perry on the ground that it was the fruit of a search that extended beyond the scope of the search warrant. The District Court ruled that Taylor lacked standing to assert a Fourth Amendment privacy right in this matter, as he claimed in his defense that the premises searched were not his own. Tr. II–44–45.

■ We do not believe that the trial judge needed to reach the Constitutional issue involved here, *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), because Taylor has presented no proof that the document was in fact obtained by a search

beyond the scope of the warrant. It is true that the warrant authorized a search only for weapons. R. 36. Taylor's claim is that the document was in a basket which was too small to contain a weapon. But his motion to suppress contains no affidavit tending to establish this fact, R. 36; Taylor adduced no evidence at the suppression hearing, Tr. II–42–43; and when the officer who found the receipt testified at trial, he provided no clear information—on direct or on cross-examination—tending to show that the document was found inside a small container, Tr. II–231–40. Taylor has failed to carry his burden of demonstrating that the document was in fact obtained by a search beyond the scope of the warrant, so his motion was properly denied.

 Second, the District Court properly allowed records of a pawn transaction involving one of the seized guns to come in. Taylor objected when the Government sought to introduce pawn shop records that showed that one of the guns listed in the indictment had been pawned in December of 1987 and again in January of 1988. The District Court originally ruled that the records were irrelevant. Tr. III–247–48. When on the stand, however, Taylor *made* them relevant by claiming that all the guns seized had been at the 341 Margin Street house ever since he was released from prison in 1985 and by denying that he had ever pawned the gun in question. Tr. III–425–26. The Government then attempted to reintroduce the records in rebuttal, Taylor objected, and the Court allowed the records to come in. Tr. IV–467–68. We see no error in the District Court's ruling admitting this evidence.

### B. Closing Argument.

Finally, we turn to Taylor's appeal from the denial of his motion for a mistrial. Taylor founded this motion on remarks made by the prosecuting attorney which he claims were improper and prejudicial. In her closing argument, Taylor's attorney had stated that, if the Government had taken fingerprints from the guns, it would have destroyed its own case because Taylor had never touched the guns. Tr. IV–496–97. In its closing argument, the Government then stated that the defense had the power to test the guns for fingerprints just as the Government did. Tr. IV–507–08. Taylor objected by a motion for mistrial, which the Court denied. Tr. IV–510. The Court did, however, issue a curative instruction, informing the jury that it must disregard the prosecutor's remark and emphasizing that, because the Government bore the entire burden of proof, Taylor had no obligation to prove anything. *Id.* Even if the prosecutor's remark was improper—and we do not hold that it was—the District Court's immediate curative instruction rendered the error harmless. It was well within the trial court's discretion to determine that this relatively minor skirmish was not so prejudicial to Taylor that it necessitated a mistrial. *Angel v. Overberg*, 682 F.2d 605 (6th Cir.1982); *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976).

### CONCLUSION

For all the foregoing reasons, Taylor's conviction and sentence are AFFIRMED.