7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Troyze WOODARD, Defendant-Appellant.
 No. 92-6680.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1993.
 
 Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 Troyze Woodard was convicted of two drug-related offenses. He now appeals, arguing that: (1) the district court failed to give a necessary cautionary instruction; (2) the government's misstatement of the law during closing argument requires a new trial; and (3) the jury instructions were improper. For the reasons stated, we affirm the conviction.
 
 
 2
 * On June 4, 1992, Officer Ragland of the Memphis Police Department noticed a green Bronco truck at a car wash. Ragland decided to observe the vehicle more closely because he had received information that "there was possibly a drug dealer in the area driving a green Bronco...." Shortly thereafter, the officer saw the person sitting in the driver's seat get out of the vehicle and change places with the person sitting in the front passenger seat. Ragland recognized the new driver because the officer had previously learned that that individual did not have a valid driver's license. Ragland followed the vehicle when it left the car wash, and he parked behind it when it pulled into a nearby driveway. Ragland then got out of his car to speak with the occupants.
 
 
 3
 Ragland testified that as he got out of his patrol car, Woodard hurried out of the passenger side of the Bronco and began to flee. Ragland secured the car and saw Woodard throw something onto the ground approximately ten feet from the Bronco. Woodard then returned to the vehicle. Officer Hawkins arrived to help Ragland, and together they secured the vehicle and its occupants. Ragland then went to the area where he believed something had been tossed. He found a pill bottle containing 44 rocks of crack cocaine, and he found a number of small plastic bags filled with cocaine powder and rock cocaine. Ragland subsequently arrested Woodard and found a beeper and more than $500 in cash in his pockets. Inside the car, a .22 caliber pistol was found, as well as a notebook containing names, notations regarding amounts of money, and references to drugs.
 
 
 4
 A grand jury returned a two-count indictment against Woodard. Count one charged that Woodard possessed cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count two charged Woodard with possession of cocaine powder with the intent to distribute, also in violation of 21 U.S.C. § 841(a)(1). At trial, the defense's theory was that the cocaine did not belong to Woodard but to one of the back seat occupants, John Retic. Although Retic had told police at the time of his arrest that he did not know who owned or threw the drugs that Officer Ragland found, he testified at trial that the drugs had actually belonged to him. He also testified that, while the officers were securing one of his fellow passengers, he leaned out of the Bronco and threw the drugs to the location where they were eventually discovered. Retic admitted that, when he was searched, crack paraphernalia was found on his body. Retic further admitted to being a frequent user of crack. While cross-examining Retic, the prosecution sought to impeach his testimony by offering the statement that he had made to the police on the day of the arrest.
 
 
 5
 The jury returned a guilty verdict on both counts of the indictment against Woodard. He was sentenced to 120 months' imprisonment. This timely appeal followed.
 
 II
 
 6
 The government used Retic's signed statement to impeach him during his cross-examination. The signed statement contradicted Retic's assertion at trial that the drugs belonged to him.[2] Under Federal Rule of Evidence 607, the introduction of Retic's prior statement was a proper means of impeachment. United States v. Townsend, 796 F.2d 158, 162 (6th Cir.1986). In the present case, however, no cautionary instruction was given to the effect that the statement was only admissible for impeachment purposes. Thus, according to Woodard, the court allowed the statement to be used as substantive evidence of his guilt. Woodard argues that this was error because prior unsworn statements are hearsay, and they are not admissible as substantive proof. United States v. Crouch, 731 F.2d 621, 623 (9th Cir.1984), cert. denied, 469 U.S. 1105 (1985).
 
 
 7
 Woodard is correct that a cautionary instruction should have been given. However, he failed to voice any objection at trial. Thus, this court may review the failure to give the instruction only for "plain error." Fed.R.Crim.P. 52(b); United States v. Grosshans, 821 F.2d 1247, 1253 (6th Cir.), cert. denied, 484 U.S. 987 (1987). Plain error review is discretionary and is used solely in those situations where a manifest miscarriage of justice would otherwise result. Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir.1987). Plain errors are those "that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987) (citations omitted), cert. denied, 486 U.S. 1034 (1988).
 
 
 8
 The present error did not rise to this level. Retic's earlier statements did not directly implicate Woodard. Rather, those statements were merely indirect evidence, serving to disprove the defense's alternative theory that Retic himself had possessed the drugs. As direct evidence, the government relied upon such physical evidence as the drug paraphernalia and upon the testimony of the arresting officers. This direct evidence is sufficient to overcome the district court's failure to give a cautionary instruction.
 
 
 9
 Appellant seeks to bolster his appeal by relying on United States v. Lester, 491 F.2d 680 (6th Cir.1974). However, in Lester the contested prior statement was used by the prosecution for direct evidence of the defendant's guilt. In Lester, associates of the defendant testified at trial that the defendant had not been involved in the operation of a still. These statements were then rebutted by a treasury agent who testified that these same associates had earlier said that Lester did operate the still. This testimony by the officer constituted the entirety of the government's direct evidence against Lester. Consequently, this court reversed the conviction, holding that it had been plain error not to caution the jury that the treasury agent's testimony could be used only to impeach the other witnesses, and not as substantive evidence of guilt.
 
 
 10
 Lester is distinguishable from the instant case because in Lester the prior statement directly implicated the defendant. By contrast, in the present case, not only was the evidence very indirect, but other, better evidence was offered against the appellant. Moreover, during closing argument, the government used the earlier statement merely to show that Retic was a "liar" and could not be trusted. The government never tried to use the statement as substantive evidence. For these reasons, the failure to give a cautionary instruction does not rise to the level of plain error.
 
 III
 
 11
 During closing argument, the government attacked Retic's testimony. The prosecutor stated:
 
 
 12
 What does Mr. Retic risk by coming in here and saying, "The drugs are mine"? What does he risk when you say, "Well, you could prosecute him for that." Could we prosecute him for that, ladies and gentlemen? Use your common sense. Mr. Retic has said the drugs were his. If he's charged with this crime and he goes to trial, he doesn't have to testify. That statement cannot be used against him. Who ... would Mr. Retic call as his witness? He would call Officer Ragland and Officer Hawkins, because he knows [they] are going to testify that they didn't see John Retic with the dope.... They have already testified under oath to that effect. The jury would have to find Mr. Retic not guilty.
 
 
 13
 He risks nothing ... coming in here and claiming that dope.
 
 
 14
 Woodard now argues that the government's closing argument necessitates a new trial. He first argues that it was improper for the government to contend that Retic "risk[ed] nothing." Indeed, the defense attorney objected to this statement after the prosecutor finished his closing argument. The defense attorney stated that, at a minimum, Retic could be charged with perjury. 18 U.S.C. § 1621. However, the court overruled the objection. Woodard also argues that it was improper for the government to state that the courtroom testimony could not be used against Retic because this testimony could in fact be used against him in a criminal prosecution. See Federal Rule of Evidence 801(d)(2)(A) (establishing that prior admissions of a party-opponent are admissible); United States v. Cohen, 946 F.2d 430, 435 (6th Cir.1991).
 
 
 15
 We reject Woodard's position. Regarding the statement that Retic "risks nothing," reversal is not necessary. During his own closing argument, the defense attorney refuted the government by stating that "that is not accurate.... He has plenty to lose.... Anybody who would come in and lie has something to lose." Looking over the record, it appears that the defendant got the best of this exchange. In front of the jury, he pointed out that the government had misstated the law. Moreover, when the contested remarks are placed in their proper context, it is clear that the United States Attorney's comments regarding Retic were not addressed to the question of a possible perjury conviction. Rather, the prosecutor was discussing whether Woodard could be brought up on drug charges. Given the officers' statements at trial, the government likely was correct that a drug prosecution against Retic would fail. Thus, any error was harmless. United States v. Martinez, 981 F.2d 867, 871 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1874 (1993) (improper statements during closing argument are subject to the harmless error standard; only errors that are so gross as probably to prejudice the defendant require a new trial).
 
 
 16
 Woodard also objects to the statement by the prosecutor that Retic's trial testimony "cannot be used against him." The government concedes that this statement was error. However, Woodard failed to object; therefore, the plain error standard governs. Consequently, the prosecutor's misstatement does not require a new trial. The improper comment did not pertain directly to the defendant, and there existed other very convincing evidence against the defendant, including the officers' testimony and the physical items discovered. Accordingly, the plain error standard has not been satisfied.
 
 IV
 
 17
 The district court charged the jury on actual, constructive, sole, and joint possession. The defense objected to the joint possession instruction, contending that neither side had argued joint possession. The trial judge denied the objection and explained that "I always charge joint possession." She further observed that a jury "could believe part of Mr. Retic's testimony is true, but that Mr. Woodard also had control to the extent he was the one [who] threw it away." Woodard now argues that it was error to give the joint possession instruction.
 
 
 18
 The instruction was not error in this case. This court has noted, "[a]lthough boilerplate instructions have their place, they should not be used without careful consideration being given to their applicability to the facts and theories of the specific case being tried." United States v. Wolak, 923 F.2d 1193, 1198 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2824 (1991). A trial judge should not "always charge joint possession" without considering the facts of the case. However, the facts of the present case warranted a joint possession instruction. A jury could have reasonably concluded from the evidence that Retic had the drugs but that Woodard, being in the front seat of a two-door vehicle, took the drugs from Retic and attempted to throw them away. Or, the jury could have concluded that Retic possessed the drugs at all times but that Woodard, because he owned the vehicle and had drug paraphernalia on him at the time of the arrest, actually owned the drugs and thus also possessed them.
 
 
 19
 Moreover, although both sides strictly argued sole possession, a jury is not limited to the interpretations put forth by the opposing sides. Rather, a "jury is free to choose among reasonable constructions of the evidence." United States v. Ospina, 823 F.2d 429, 433 (11th Cir.1987) (citing United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd on other grounds, 462 U.S. 356 (1983)), cert. denied, 485 U.S. 964 (1988). Accordingly, inclusion of a joint possession instruction was not error.
 
 
 20
 For the reasons stated, the conviction is AFFIRMED.
 
 
 
 [1]
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 The earlier statement also contradicted Retic's assertion at trial that the gun found in his possession belonged to him. In the statement, Retic claimed that he was holding the weapon for a friend