25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mark K. CROSS, Defendant-Appellant.
 No. 93-3839.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1994.
 
 Before: JONES, BOGGS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Mark K. Cross, was originally charged in an indictment with the unlawful possession of a firearm after having been convicted of three prior violent felonies, in violation of 18 U.C.C. Secs. 922(g) and 924(a)(2). After a bench trial, he was convicted of unlawful possession, and he was sentenced to 180 months in prison, under 18 U.S.C. Sec. 924(e)(1). On direct appeal, the defendant raises two issues concerning the evidence presented at trial and a further issue concerning his sentence. We find no reversible error in connection with either the conviction or the sentence, and we therefore affirm the district court's judgment.
 
 I.
 
 2
 The first two issues, challenging certain aspects of the evidence offered at trial, require a brief recitation of the proof to put them in context.
 
 
 3
 The defendant, Mark Cross, lived in a trailer with his girlfriend, Mary Metzger, his brother, Tim Cross, and the brother's girlfriend, Michelle Redmond. Tim Cross owned three long-barrelled firearms, which he kept in an unlocked cabinet in his bedroom.
 
 
 4
 The events in question arose out of an altercation between the defendant and his girlfriend, who was visiting her sister that evening. Defendant Mark Cross, in a state of extreme agitation, dumped Metzger's clothes on the lawn at her sister's house and threatened her. Metzger called the police, but before they arrived, Cross left, vowing to return with a gun. At about the same time, Michelle Redmond saw the defendant driving toward the trailer and then, a few minutes later, driving away from the trailer. Arriving there herself a short time later, Redmond noticed that one of Tim Cross's firearms was missing.
 
 
 5
 When the defendant arrived back at the scene of the altercation, the police had also arrived. The defendant immediately drove off, and a high-speed chase ensued. Cross eventually ditched his car in a field. Directly behind the defendant, with a clear view, Officer Michael J. Kemper saw Cross bail out of the car and then reach back in and remove a long-barrelled gun, before disappearing into the brush.
 
 
 6
 Unable to apprehend the defendant on foot, Officer Kemper called in a canine unit and, although the tracking dog was unable to locate Cross, while on his scent, the dog did point officers to a shotgun (which eventually became the crucial government evidence at trial) in the direction in which the defendant fled. According to the testimony of one of the handlers, given the dog's tracking ability and the conditions at the scene, the shotgun could not have been exposed in the field for more than two and one-half hours. Officer Kemper testified that the shotgun was in very good condition when found and that it resembled the one the defendant had in his hand when he left his automobile. A check of the serial number revealed that the weapon had been sold to Tim Cross, the defendant's brother.
 
 
 7
 The defendant was later arrested and brought to trial. Testifying on direct examination, Officer Kemper was asked about the condition of the shotgun found by the canine unit. Specifically, the prosecutor asked Officer Kemper whether, "[g]iven the conditions that evening, would [he] expect there to be some rust in a relatively short time if it had been left out?" Defense counsel objected, questioning the basis of the witness's opinion. The district judge reserved his ruling. The prosecutor then established that Officer Kemper had owned and maintained several guns similar to the one at issue and asked, "[B]ased upon that personal experience, do you have an opinion about the condition of this weapon when it was found?" Officer Kemper replied, "It was well-kept or taken care of. I don't believe it was out for any extended period of time." The court never ruled on the defendant's objection, perhaps because it was not renewed at the appropriate point following Kemper's testimony.
 
 
 8
 The defendant nevertheless argues on appeal that the district court erred in failing to rule on his objection to Kemper's "opinion" testimony, which, he contends, Kemper offered "as an expert on the subject of the aging of metal used in shotguns." The defendant further argues that the government failed to lay a proper foundation, and that by not excluding Kemper's testimony, the district court committed prejudicial error.
 
 
 9
 The government counters that the prosecution did, in fact, lay a proper foundation following the defendant's initial objection and that by failing to renew the objection after the foundational testimony, the defendant has waived any error in connection with Officer Kemper's testimony. We agree. From the district judge's perspective, the defendant's failure to renew his objection at the appropriate time may have signalled acquiescence in the admissibility of the testimony in question.
 
 
 10
 Moreover, we have real question about whether Officer Kemper's testimony rose to the level of an expert's opinion, principally because he never actually expressed an opinion "on the subject of aging of metal." The record tends to establish that he did no more than describe the condition of the shotgun when it was found and related that condition to his general experience with guns. Hence, no basis for objection existed in the first place, and the omission of a ruling on the admissibility of Kemper's testimony is, at best, a moot point.
 
 
 11
 The only other challenge to the evidence offered at trial concerns its sufficiency. We have no difficulty in concluding that the proof meets the standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), and we therefore affirm the judgment of conviction.
 
 II.
 
 12
 The defendant also challenges the validity of his sentence, which was enhanced under 18 U.S.C. Sec. 924(e)(1), rather than under the penalty provision charged in the indictment, 18 U.S.C. Sec. 924(a)(2). Although Sec. 924(a)(2) also provides the penalty for conviction under Sec. 922(g), the additional penalty provided in Sec. 924(e)(1) specifically applies "[i]n the case of a person who violates section 922(g) ... and has three previous convictions ... for a violent felony...." And, while it is true that the indictment in this case mentioned Sec. 924(a)(2) (but not Sec. 924(e)(1)), it is also true that the indictment alleged that Cross had three prior convictions for violent felonies and specifically set out those convictions. Moreover, the convictions specified in the indictment were stipulated prior to trial.
 
 
 13
 The government concedes that the indictment referred incorrectly to Sec. 924(a)(2), but characterizes this as an insignificant error, rather than one which struck at the fundamental fairness of the sentencing process. In support of this contention, the government cites U.S. v. Kimmons, 965 F.2d 1001, 1011 (11th Cir.1992), cert. denied, 113 S.Ct. 1065 (1993), vacated sub nom. Small v. U.S., 113 S.Ct. 2326 (1993), judgment reinstated on remand, 1 F.3d 1144 (11th Cir.1993), a case in which the Eleventh Circuit rejected a nearly identical appeal in a nearly identical factual situation:
 
 
 14
 [Defendant] Small further challenges his sentence pursuant to 18 U.S.C. Sec. 924(e)(1), stating that he was charged in Count VII with violating 18 U.S.C. Sec. 924(a)(1)(B), which carries a maximum term of only five years. Thus, Small contends, he was not legally on notice of his offense and the potential penalty of life imprisonment. However, in the same count, the indictment also charged him with violating 18 U.S.C. Sec. 922(g)(1). The indictment not only specified the elements of the offense under 18 U.S.C. Sec. 922(g)(1), but also specified the convictions that established Small's eligibility for the potential life sentence carried under that section. The government concedes that it incorrectly included 18 U.S.C. Sec. 924(a)(1)(B) in Count VII, but notes that the reference is merely surplusage given that the district court disregarded it and properly applied Sec. 924(e)(1) pursuant to Sec. 922(g)(1). We agree. The enhanced penalty provisions of 18 U.S.C. Sec. 924(e)(1) are not elements of the offense and need not be set forth in the indictment. See U.S. v. McGatha, 891 F.2d 1520, 1524-25 (11th Cir.), cert. denied, 495 U.S. 938, 110 S.Ct. 2188, 109 L.Ed.2d 516 (1990).
 
 
 15
 Echoing the last sentence of this passage from Kimmons, the government correctly points out that this court has likewise held that the enhanced penalty provisions of Sec. 924(e)(1) are not elements of Sec. 922(g). See U.S. v. Wolak, 923 F.2d 1193, 1199 (6th Cir.), cert. denied, 111 S.Ct. 2824 (1991), and U.S. v. Brewer, 853 F.2d 1319, 1322 (6th Cir.1988), cert. denied 488 U.S. 946 (1988) and 489 U.S. 1021 (1989).
 
 
 16
 Because there is no plausible argument that the defendant did not receive actual notice of the government's intent to seek enhanced punishment in this case, we need not address that question in this opinion. Suffice it to say that the district court did not err in sentencing Cross under Sec. 924(e)(1).
 
 
 17
 For these reasons, we hold that the district court's judgment is AFFIRMED in all respects.